Louis D. HASTINGS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–602.

Court of Appeals of Alaska.

May 15, 1987.

Pamela Cravez, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Louis Hastings was convicted, based upon his pleas of no contest, of six counts of first-degree murder, and two counts of attempted murder. AS 11.41.100(a)(1); AS 11.31.100.

At a hearing, Hastings presented evidence that he fell under the provisions of AS 12.47.030 and former AS 12.47.050, which provide for treatment of defendants found guilty but mentally ill. Judge Ralph E. Moody found that Hastings did not qualify as guilty but mentally ill. Judge Moody then proceeded to sentencing. Hastings moved to continue sentencing; Judge Moody denied the motion. He sentenced Hastings to six ninety-nine year terms for the first-degree murder convictions, and two twenty-year terms for the attempted murder convictions. All terms were to be served consecutively. Hastings appeals Judge Moody's findings, the denial of his motion to continue sentencing, and the sentence imposed.

After sentencing, Hastings moved to withdraw his pleas, alleging that he had received ineffective assistance of counsel. Judge Victor D. Carlson was assigned to the hearing on Hasting's claim. Hastings moved to peremptorily challenge Judge Carlson. Judge Douglas Serdahely denied the motion. At the subsequent hearing, Judge Carlson found that Hastings had not received ineffective assistance of counsel. Hastings appeals the denial of his peremptory challenge and Judge Carlson's finding.

We affirm the trial court's finding that Hastings did not qualify as guilty but mentally ill. We conclude that Judge Moody did not err in refusing to delay sentencing. We also affirm Hastings' sentences on the murder convictions. We vacate his sentences on the attempted murder convictions and remand for resentencing on those charges. We also remand for further proceedings to determine whether Hastings was improperly denied his right to peremptorily challenge Judge Carlson in post-conviction relief proceedings. We do not reach the issue of whether Hastings received ineffective assistance of counsel.

Hastings' convictions arose from his attempt to kill all the residents of the small town of McCarthy, Alaska. The influx of money and people to Alaska disturbed Hastings. He decided to end these trends by disrupting the flow of oil through the Trans-Alaska pipeline. Having decided to blow up a pump station on the pipeline, Hastings concluded that it was necessary to kill all of McCarthy's residents to eliminate them as possible witnesses. In preparation for his plan, Hastings accumulated several firearms and at least 2,000 rounds of ammunition. He also manufactured a silencer for a pistol he intended to use. On March 1, 1983, as McCarthy's townspeople prepared to meet the weekly mail plane, Hastings systematically began killing them. He succeeded in killing six people and wounding two others. One victim escaped, after she was wounded, by eluding Hastings as he searched for her. The other surviving victim was able to escape by plane and alert state troopers. The troopers flew into McCarthy and captured Hastings as he attempted to escape on a snowmachine belonging to one of his victims.

## GUILTY BUT MENTALLY ILL FINDING

A three-day hearing on the question of whether Hastings should be found "guilty

but mentally ill" was held. Hastings presented one witness, Dr. Joseph Satten, a psychiatrist. The state presented two witnesses, Dr. David J. Coons and Dr. Irvin Rothrock; they are both psychiatrists. After hearing testimony from all three witnesses, as well as arguments from counsel, Judge Moody found that Hastings had not established that he was guilty but mentally ill. Judge Moody then approved the state's proposed findings of fact and conclusions of law.

Alaska Statute 12.47.030(a) sets out the standard for a finding of guilty but mentally ill:

> A defendant is guilty but mentally ill if, when the defendant engaged in the criminal conduct, the defendant lacked, as a result of a mental disease or defect, the substantial capacity either to appreciate the wrongfulness of that conduct or to conform that conduct to the requirements of law. A defendant found guilty but mentally ill is not relieved of criminal responsibility for criminal conduct and is subject to the provisions of AS 12.47.050.

The defendant has the burden of proving that he was guilty but mentally ill by a preponderance of the evidence. AS 12.47.-040(b); AS 12.47.060(a).

Judge Moody made findings of fact supporting his decision. Unless these findings are clearly erroneous they must be approved. *Troyer v. State*, 614 P.2d 313, 318 n. 11 (Alaska 1980); *Van Cleve v. State*, 649 P.2d 972, 976 (Alaska App.1982).

Both Dr. Rothrock and Dr. Coons testified that Hastings had the ability to conform his conduct to the requirements of the law. They testified that he did not suffer from any mental disease or defect which prevented him from forming the intent to kill.

Dr. Satten testified that he did not believe that Hastings appreciated the wrongfulness of his conduct. Dr. Satten concluded that Hastings knew what he was doing, however, emotionally Hastings did not comprehend or appreciate the wrongfulness of his actions. Dr. Satten did believe that Hastings probably had the ability to con-

form his conduct to the requirements of the law.

■ The facts of this case support Judge Moody's finding that Hastings' actions were planned over a long period of time and were carried out according to that plan. Judge Moody could reasonably rely on these facts and the opinions of Dr. Rothrock and Dr. Coons in rejecting Dr. Satten's analysis. We conclude that Judge Moody did not err in finding that Hastings did not establish that he was guilty but mentally ill. *See Dolchok v. State*, 519 P.2d 457 (Alaska 1974).

REFUSAL TO DELAY SENTENCING

At the conclusion of the hearing concerning Hastings' claim that he was guilty but mentally ill, Judge Moody announced that the sentencing hearing would immediately follow. Hastings' counsel moved to continue sentencing, arguing that he needed more time to prepare. Judge Moody denied this motion. Just prior to imposing sentence, Judge Moody gave Hastings a chance to exercise his right of allocution. Alaska R.Crim.P. 32(a). Hastings indicated that he had not had sufficient time to decide what he should say and needed more time to prepare. Judge Moody found that Hastings was attempting to manipulate the system by delaying sentencing. He proceeded to impose sentence.

■ Hastings argues that Judge Moody erred in not granting a continuance of sentencing and that he was effectively denied his right of allocution. However, the record reflects that Judge Moody gave Hastings notice throughout the guilty but mentally ill hearing that sentencing would take place at the end of that hearing. Although Hastings was given the opportunity to explain why delay was necessary, Hastings never specifically indicated why he needed more time to prepare for sentencing or what information he might present. Hastings has not indicated on appeal specifically how he was prejudiced. The record reflects that the presentence report had been issued three months before sentencing. On this record, we conclude that

Judge Moody did not err in refusing to delay sentencing.

## SENTENCE

Judge Moody sentenced Hastings to serve six ninty-nine year sentences for the first-degree murder convictions. He imposed two twenty-year terms for the attempted murder convictions. Judge Moody imposed all of the sentences consecutively. Hastings argues that this sentence is excessive.

█ Hastings contends, that his sentences on the attempted murder convictions are illegal. Attempted murder is a class A felony. AS 11.31.100(d)(1); AS 11.41.-100(b). The presumptive term for a first-felony offender convicted of a class A felony is seven years. AS 12.55.125(c)(2). Hastings has no prior felony convictions. Therefore, Judge Moody was required to impose the seven-year presumptive sentence unless he found aggravating or mitigating factors. *McManners v. State*, 650 P.2d 414, 416 (Alaska App.1982); *see also* AS 12.55.155. The state did not propose any aggravating factors and Judge Moody found none. Consequently, the record in this case does not support the twenty-year sentences for attempted murder. We therefore vacate the attempted murder sentences and remand for resentencing on those convictions.

Even without considering the convictions for attempted murder, Hastings' sentence totals 594 years. Clearly, whatever final sentence Hastings receives, his sentence is essentially one of life imprisonment without possibility of parole. Therefore, we see no reason not to review his sentence for the murder convictions at this time.

On appeal, a sentence will be affirmed unless clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). This court recently acknowledged that Alaska cases have consistently approved imposing maximum sentences for first-degree murder. *Riley v. State*, 720 P.2d 951, 952 (Alaska App.1986). In *Nukapigak v. State*, 663 P.2d 943 (Alaska 1983), the supreme court approved three consecutive ninety-nine year terms for first-degree murder convictions. The court stated:

> Given the heinous nature of Nukapigak's crimes and a record which is devoid of hope for his rehabilitation, we cannot say that consecutive ninety-nine year sentences are clearly mistaken. If a sentencing court has considered each of the *Chaney* criteria ... the Alaska Constitution does not prohibit sentences which constitute, in effect, a lifetime of imprisonment without hope of parole. Until the legislature determines otherwise, consecutive ninety-nine year sentences are permissible, at the sentencing court's discretion, at least in exceptional cases such as this one.

663 P.2d at 946.

█ Nukapigak's case is distinguishable from Hastings' because Nukapigak had a prior criminal history of serious assaultive behavior. 663 P.2d at 945. Hastings had no prior criminal record. However, given the facts in this case, we cannot find that Judge Moody was clearly mistaken in imposing a sentence of life imprisonment without the possibility of parole. The record supports Judge Moody's finding that the murders which Hastings committed were well planned over a long period of time and were carried out according to that plan. The nature of Hastings' plan and the number of victims involved are horrifying. This seems to us to be an exceptional case which clearly falls under the *Nukapigak* standard. We conclude that the murder sentences are not clearly mistaken.

## POST–CONVICTION RELIEF PROCEEDINGS

Hastings was sentenced on July 27, 1984. Sometime thereafter, Hastings filed a motion to withdraw his pleas, asserting that he had received ineffective assistance of counsel. Ultimately, an attorney was appointed to investigate Hastings' claim.

At a preliminary hearing on November 27, 1984, Hastings moved to disqualify Judge Moody from hearing the case, on the ground that the judge might be called as a witness. Judge Moody refused to recuse himself.

The parties' next court appearance was February 1, 1985. This was apparently the scheduled date for a hearing on the merits of Hastings' claim. Judge Carlson presided at this hearing. Hastings asked if Judge Carlson's appearance as the trial judge meant that the motion to disqualify Judge Moody had been granted. Judge Carlson responded that it did not. Judge Carlson denied the renewed motion to disqualify Judge Moody. However, Judge Carlson indicated that he personally would conduct the hearing because Judge Moody had retired and was unavailable. Hastings then moved to peremptorily disqualify Judge Carlson. Judge Carlson indicated that he would talk to the presiding judge in order to attempt to find another judge to hear the matter.

On February 4, 1985, Judge Serdahely, the presiding judge, issued an order stating that Hastings' motion to challenge Judge Carlson was "untimely pursuant to Criminal Rule 25(d)(5)." He further stated that Hastings had "waived his right to peremptorily disqualify Judge Carlson." Judge Serdahely scheduled a hearing before Judge Carlson for March 6, 1985. On February 20, 1985, Hastings filed a motion for reconsideration of his request to challenge Judge Carlson. There was no ruling on this motion before the scheduled hearing on Hastings' post-conviction relief claim.

At the March 6th hearing, Hastings asked Judge Carlson whether the motion for reconsideration had been denied. Judge Carlson informed the parties that there had not yet been a ruling. Hastings replied that because of the passage of time, he would assume that it had been denied. Therefore, he stated that he would appeal the denial. Hastings then requested that they not proceed in front of Judge Carlson.

When Judge Carlson denied the request, Hastings' attorney stated that his client had instructed him not to proceed any further. Judge Carlson held the hearing without Hastings' participation. Judge Carlson found that Hastings had failed to show that he had received ineffective assistance of counsel and that Hastings' pleas were entered voluntarily, knowingly, and intelligently. Therefore, he denied the motion to withdraw pleas. Judge Serdahely formally denied Hastings' motion to reconsider, on March 19, 1985.

On March 16, 1985, Hastings filed a *pro se* notice of expedited appeal, pursuant to Alaska Appellate Rule 216(d). On March 28, 1985, Hastings submitted a memorandum in support of his motion. On April 24, 1985, the court clerk returned Hastings' *pro se* filings pursuant to Alaska Appellate Rule 514(f) because the Office of Public Advocacy (OPA) was then counsel of record. Apparently, however, OPA had not been assigned to represent Hastings until March 22, after Hastings had filed his notice of expedited appeal.

On February 28, 1986, OPA, on Hastings' behalf, filed a motion in this court to accept a late filed expedited appeal. This court denied that motion. This court granted Hastings' subsequent motion to supplement his pre-existing appeal with this issue.

The parties to this appeal assume that Hastings was entitled to a peremptory challenge in a post-conviction relief proceeding and that Alaska Appellate Rule 216 required that Hastings take an expedited appeal of the denial of his peremptory challenge. We question those assumptions but are unwilling to decide those issues; they have not been adequately briefed.[1] *Wren*

---

1. Alaska Criminal Rule 25(d)(1) allows a peremptory challenge in a criminal trial. Alaska Civil Rule 42(c) allows a peremptory challenge in a civil proceeding. Post-conviction relief procedures, are generally considered civil proceedings. *Hensel v. State,* 604 P.2d 222, 229 n. 22 (Alaska 1979); *see also* Alaska R.Crim.P. 35(i). Alaska Appellate Rule 216(b)(3) defines a peremptory challenge appeal as an appeal by a criminal defendant under Criminal Rule 25(d). It is therefore unclear whether a peremptory

challenge in a post-conviction relief proceeding must be made under Criminal Rule 25 or Civil Rule 42, and whether an appeal from a denial of such a motion must be made on an expedited basis under Appellate Rule 216.

We note that this is a case where the judge in the original criminal action did not conduct the post-conviction relief proceeding and that there is no claim that Hastings exercised a peremptory challenge in the original criminal case.

*v. State,* 577 P.2d 235, 237 n. 2 (Alaska 1978).

██ The proper procedure for exercising a peremptory challenge in post-conviction relief proceedings and appealing the denial of a peremptory challenge in post-conviction relief proceedings is unclear. Therefore, on these facts and this briefing, we are unwilling to find that Hastings had no right to exercise a peremptory challenge or did not timely appeal the denial of his peremptory challenge. Hastings clearly indicated his intent to peremptorily challenge Judge Carlson and to appeal the denial of his peremptory challenge. On examining the record, we find that it is inadequate for us to determine why Judge Serdahely found that, on February 4, Hastings' motion was untimely and that Hastings had "waived his right to peremptorily disqualify Judge Carlson." [2] We therefore remand to Judge Serdahely for clarification and redetermination of this issue.[3]

This case is REMANDED for further proceedings consistent with this opinion.

---

**2.** It appears as if Judge Serdahely might have been referring to a hearing on November 7, 1984, where Hastings appeared in front of Judge Carlson. We do not have a transcript of this hearing to determine whether this hearing actually was the basis for Judge Serdahely's decision. The state asks us to rule against Hastings on the grounds that there is an inadequate record for us to decide the issue. However, since we cannot know whether the November 7, 1984, hearing is the basis for Judge Serdahely's ruling, we are not inclined to default Hastings for designating an inadequate record. *See Gardner v. State,* 702 P.2d 250 (Alaska App.

1985) (defendant's participation in a contested bail hearing in front of a judge did not waive the right to peremptorily challenge that judge under Criminal Rule 25(d)(5)).

**3.** We do not decide whether Judge Carlson properly denied Hastings' motion for post-conviction relief, since Judge Serdahely's clarification and redetermination of the denial of Hastings' peremptory challenge may make this issue moot. If Judge Serdahely again denies Hastings' motion, Hastings may then appeal Judge Carlson's finding as well as the denial of his peremptory challenge.