**James A. RIDGELY, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**William G. PLUMLEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Shelley Ann BOSCH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–30, A–43 and A–56.**

Court of Appeals of Alaska.

July 24, 1987.

---

Harry Branson, Anchorage, for appellant Ridgely.

William J. Pauzauski, Anchorage, for appellant Plumley.

Grant Callow and Sen K. Tan, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant Bosch.

William H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, An-

chorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

After being convicted of murder and other offenses related to the August 1982 killing of Mildred Landesman, the appellants, James A. Ridgely, Jr., William G. Plumley, and Shelley Ann Bosch, appealed their convictions to this court. In *Ridgely v. State*, 705 P.2d 924 (Alaska App.1985), we described the circumstances surrounding the offenses and rejected many of the arguments raised by the appellants, but found that a confession given by Ridgely was involuntary. Based on this finding, we ordered Ridgely's conviction reversed, and we remanded Plumley's and Bosch's cases for further proceedings to determine the extent, if any, to which their convictions were tainted by evidence derived from Ridgely's involuntary confession. *Id.* at 935.

In response to a petition for hearing by the state, the Alaska Supreme Court, in *State v. Ridgely*, 732 P.2d 550 (Alaska 1987), reversed our decision, concluding that Ridgely's confession had been voluntarily given. The supreme court remanded the case to us for resolution of the issues left undecided in our original opinion. *Id.* at 557. We now resolve these issues.

■ This court's opinion in *Ridgely v. State* disposed of all but one of the issues relating to the merits of the appellants' convictions: because our reversal of Ridgely's conviction rendered it unnecessary, we did not address his claim that the trial court erred in failing to give a proper jury instruction on the lesser-included offense of manslaughter. *Ridgely v. State*, 705 P.2d at 935 n. 5.[1] Ridgely's challenge is premised on the fact that the manslaughter instruction given to the jury referred only to reckless homicide and did not inform the jury that knowing and intentional homicides may qualify as manslaughter. *See* AS 11.41.120 (defining manslaughter as any intentional, knowing, or reckless killing of another "under circumstances not amounting to murder in the first or second degree"). This claim must fail, however, since Ridgely has suggested no theory under which the evidence might have supported a conviction of manslaughter based on intentional or knowing conduct. *See Martin v. State*, 664 P.2d 612, 615–18 (Alaska App.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 234 (1984). In any event, the jury was also given a proper lesser-included offense instruction on murder in the second degree. The jury nevertheless convicted Ridgely of murder in the first degree. Given the jury's rejection of second-degree murder as a lesser-included offense, it is evident that Ridgely suffered no prejudice, even assuming the challenged manslaughter instruction was inadequate. *See Christie v. State*, 580 P.2d 310, 320 (Alaska 1978).

In addition to their claims on the merits, all three of the appellants have argued that their sentences are excessive. Superior Court Judge Ralph E. Moody imposed the sentences for each of the appellants. Plumley was convicted of murder in the first degree and burglary in the first degree. He received a maximum term of ninety-nine years for murder and another ten-year maximum term for burglary. The sentences were made consecutive, for a total term of 109 years. Ridgely was similarly convicted of first-degree murder and first-degree burglary and received maximum sentences for the offenses. He was also convicted of theft in the second degree and received an additional five-year maximum term for that offense. All three sentences were made consecutive, for a total sentence of 114 years. Bosch was convicted of murder in the second degree and of

---

**1.** On remand, Bosch takes the position that our opinion in *Ridgely v. State* did not address her argument that the trial court erred in admitting crime scene photographs. This argument, however, was considered and rejected. *See Ridgely*, 705 P.2d at 932 n. 5. Ridgely separately asserts that we did not decide the claim that his confession was a fruit of Plumley's initial, unlawful detention. However, this claim was likewise rejected. *Id.* at 930.

theft in the second degree. She received a maximum term of 99 years for the murder, and a consecutive five-year term for the theft, for a total of 104 years.

██ At the time of the crime, Plumley was nineteen years of age. He had no adult record but had been institutionalized as a juvenile for theft of a handgun, theft of a vehicle, and joyriding. Dr. David Coons, a psychiatrist, diagnosed Plumley as being antisocial and as a chronic substance abuser. He indicated that Plumley probably would not have committed this crime on his own, but that he could have stopped it. Although Dr. Coons did not perceive Plumley as violent, he indicated that Plumley had a significant tolerance for violence. In imposing Plumley's sentence, Judge Moody emphasized the brutal nature of the crime and the fact that it was premeditated. He concluded that Plumley had limited prospects for rehabilitation.

██ Ridgely, the person who actually struck the blows that killed Mrs. Landesman, was sixteen years old at the time of the offense. He had formerly been adjudicated a delinquent for possession of marijuana, grand larceny, and unlawful entry. The psychiatric report indicates that, despite his youth, Ridgely has limited prospects for rehabilitation. Dr. Coons diagnosed Ridgely as meeting "the diagnostic criteria for conduct disorder, undersocialized aggressive type...." Dr. Coons further stated, "[i]t is felt the patient has strong characteristics of an antisocial personality disorder, but his current age precludes that diagnosis." In evaluating Ridgely's rehabilitation potential, Dr. Coons said, "His long-term prognosis is, in my opinion, poor, regardless of what treatment he receives."

██ Bosch was seventeen years of age at the time of the offense. She had previously been adjudicated a delinquent for burglary and theft. The psychiatric evaluations of Bosch indicate that she may be amenable to treatment. However, Judge Moody discounted the psychiatric evaluations. The judge concluded that Bosch was as culpable of Mrs. Landesman's murder as Plumley and Ridgely, even though she had

been convicted of murder in the second degree rather than of murder in the first degree.

In considering the appropriateness of the maximum sentences received by the appellants, we are satisfied that Judge Moody did not err in emphasizing the seriousness of the conduct involved in this case. It is difficult to imagine a more brutal, callous, and gratuitous crime of violence than the crime involved in the present case. The calculated and deliberate manner in which the murder was executed by the appellants clearly warrants their treatment as worst offenders, despite their youthfulness. We recognize that Bosch was convicted by the jury only of second-degree murder. Judge Moody was nevertheless entitled to make his own evaluation of the evidence in deciding how culpable Bosch's behavior was. *See Huckaby v. State*, 632 P.2d 975 (Alaska App.1981). The record before Judge Moody certainly sufficed to support the conclusion that Bosch was as guilty of premeditated murder as were Plumley and Ridgely. The maximum term of ninety-nine years received by each of the appellants, though certainly severe, was justified by the extreme nature of their crime. *See Riley v. State*, 720 P.2d 951 (Alaska App.1986).

██ A separate issue is whether the sentencing court was clearly mistaken in imposing consecutive terms for the appellants' convictions of burglary and theft. The Alaska Supreme Court has previously recognized the appropriateness of consecutive sentences for multiple acts of violence, particularly when committed against separate victims. *See, e.g., Nukapigak v. State*, 663 P.2d 943 (Alaska 1983); *Mutschler v. State*, 560 P.2d 377 (Alaska 1977); *Burleson v. State*, 543 P.2d 1195 (Alaska 1975). This court recently took a similar view in *Hastings v. State*, 736 P.2d 1157 (Alaska App.1987). Yet in the present case the burglary and theft offenses were property crimes. They were integrally related with the murder for which the appellants were convicted and were part of a single criminal episode. All of the offenses involved the same victim.

In deciding to impose maximum consecutive sentences, Judge Moody did not specifically find that consecutive sentences were necessary in order to isolate the appellants and protect the public. To the contrary, the judge apparently recognized that, in view of the young age of the appellants, it was difficult to predict with any certainty their long-term prospects for rehabilitation or to conclude that they were incapable of future rehabilitation. Judge Moody's justification for imposing maximum consecutive sentences appears to have been based almost entirely on his conclusion that such sentences were necessary to express community condemnation for the offenses.

We believe, however, that the maximum sentence of ninety-nine years received by Plumley, Ridgely, and Bosch for the murder of Mrs. Landesman is sufficient to serve the sentencing goal of reaffirming societal condemnation of the crimes committed in this case. *See, e.g., Pears v. State*, 698 P.2d 1198 (Alaska 1985). The ninety-nine year sentences are extremely severe, and certainly exceed the life expectancy of each of the appellants. Any period of time in excess of the ninety-nine year terms realistically serves only to restrict the appellants' eligibility for parole. *Cf. Jackson v. State*, 616 P.2d 23 (Alaska 1980) (sentencing judge must impose an appropriate term of incarceration on the assumption that the entire term will be served). While such a restriction might be justified in some cases if the circumstances of the particular offense or the background of the particular offenders established a compelling need to deny a parole eligibility, Judge Moody found no such need in the present case.

Given the youthfulness of the appellants, their lack of any prior adult convictions, and their lack of prior involvement in any crime of violence, we are unable to conclude that the sentencing record in this case establishes any actual need for consecutive sentences in excess of ninety-nine years. Under the ninety-nine year sentences alone, the appellants will not become eligible for parole consideration until they have completed serving one third of their terms—thirty-three years of imprisonment.

*See* AS 12.55.125(a); AS 33.16.090(d). Even then, they will be entitled to release on discretionary parole only if it appears, based on all available information, that they will conform their behavior to the requirements of the law and that they will not pose a danger to the community. AS 33.16.100(a). Accordingly, while we affirm the maximum sentences imposed by the sentencing court on all counts against each of the appellants, we reverse the judgments to the extent that they require those sentences to be served consecutively.

The convictions are AFFIRMED. The sentences are REVERSED, and these cases are REMANDED to the superior court, with directions to amend the judgments by providing for concurrent, rather than consecutive sentences.