William B. KANULIE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2873.

Court of Appeals of Alaska.

Aug. 24, 1990.

Paul E. Malin, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON,* JJ.

## OPINION

COATS, Judge.

William B. Kanulie was convicted, following a jury trial, of three counts of murder in the first degree and one count of attempted murder in the first degree. AS 11.41.100(a)(1); AS 11.41.100(a)(1) and AS 11.31.100(a). Superior Court Judge Roy H. Madsen sentenced Kanulie to three consecutive ninety-nine year terms for the murder convictions and to another consecutive seven-year term for the attempted murder conviction for a total sentence of 304 years. Kanulie appeals his conviction and sentence. We affirm.

In the afternoon of May 2, 1987, a number of commercial fishermen set up camp on a beach in the Togiak area waiting for the opening of "kelping" which was to begin later that evening. Among the fishermen were Sally Andrew, her brothers Ray and Roy Andrew, Scoli Togiak, Jerry Active, Louis Dyasuk, Chip Martin, and the appellant, William B. Kanulie. The group drank beer and whiskey and smoked mari-

---

* This case was submitted for decision prior to    Judge Singleton's resignation.

juana while they waited for the "kelping" to begin.

Active left the group and went to his tent to sleep. Meanwhile, Dyasuk got into an argument with some men in a boat who threw him into the water. Fearing that Dyasuk might become hypothermic, Ray and Sally Andrew took him into Active's tent to take his wet clothes off. Kanulie and Togiak came by the tent and began fighting. When Kanulie saw people inside of the tent, he apparently became enraged because he thought Dyasuk was preparing to sexually assault Active who was still asleep. Ray and Sally Andrew eventually got Dyasuk's wet clothes off and put him into a sleeping bag.

A few minutes later, Kanulie left Active's tent with the .22 caliber semi-automatic rifle which Active kept inside his tent. Sally Andrew approached Kanulie and apparently tried to wrestle the rifle away from him. When she tried to get away from Kanulie, he shot her in the back. After she fell, he shot her again several times. Scoli Togiak tried to hide but Kanulie found him and shot him too. Kanulie returned to the tent and fired on Active and Dyasuk. Sally Andrew, Scoli Togiak, and Jerry Active died from the bullet wounds, but Dyasuk survived. The troopers were summoned and Kanulie was arrested.

Following his arrest, Kanulie was interrogated several times. First, Trooper Joseph Campbell questioned him at the scene on the day of the murders. Later that evening, Campbell and other officers questioned him at Summit Island Fish and Game Camp. At approximately 11:00 p.m. that evening, Campbell questioned him at the Dillingham police station.

Around 4:00 a.m. the next day, Kanulie was interviewed by Campbell again, but this time Charles Merriner, the Dillingham District Attorney, also participated. At 1:32 p.m., Kanulie was interviewed for the last time again by Trooper Campbell and Merriner. The police videotaped these two statements.

Kanulie first contends that Judge Madsen erred in allowing the prosecution to introduce the videotape of the interview in which prosecutor Merriner questioned Kanulie. Kanulie argues that the introduction of this tape created two problems. First, Merriner was a witness to the events pictured on the tape. Kanulie represented that he would have wanted to call Merriner as a witness to testify on Kanulie's demeanor at the time that the tape was taken and to help clarify portions of the videotape which were inaudible. Second, Kanulie argued that he was prejudiced because Merriner appeared both on the videotape and as an advocate in the trial. Kanulie argued that Merriner, as advocate, was placed in a position of being able to argue his own credibility as a witness to events which were part of the evidence at trial.

Judge Madsen denied Kanulie's motion and ruled that the tape was admissible. He noted that Kanulie brought a pretrial suppression motion, attempting to suppress Kanulie's statements. In making this motion, Kanulie never raised any issue concerning Merriner's participation in taking two of the statements. Judge Madsen indicated that the defense knew or should have known about Merriner's participation and should have raised the issue before trial. He also concluded that the defense had not shown that Merriner was a critical witness to the statements. He pointed out that Trooper Campbell had been present when Kanulie made his statements and was available to testify. He concluded that Kanulie would not be unduly prejudiced by the fact that Merriner, the prosecutor at trial, had participated in the videotaped interrogation and ordered Merriner to not refer to his participation in taking Kanulie's statements.

▮ In *People v. Paperno*, 54 N.Y.2d 294, 445 N.Y.S.2d 119, 120, 429 N.E.2d 797, 798 (1981), the court summarized its holding in a case raising similar issues as follows:

We hold today that where the defendant, prior to trial, makes a significant showing that the prosecutor's prior investigative or prosecutorial conduct will be a material issue at the trial, the prosecutor should be recused. Where no such

showing is made, however, a conviction will be reversed only when the defendant demonstrates a substantial likelihood that prejudice resulted from the prosecutor's participation in the trial.

We believe that the analysis in *Paperno* sets forth a sensible and workable rule. When we apply that rule to this case, we conclude that we must affirm Judge Madsen's ruling.

■ By raising the issue of Merriner's role as an investigator in the middle of trial, Kanulie placed the court in a position of having to order the state to change prosecutors in midtrial, to grant a mistrial, or to exclude relevant evidence. The *Paperno* rule requires motions of this sort to be made at the pretrial stage. The record supports the trial court's conclusion that defense counsel was aware that Merriner had participated in taking Kanulie's statement. Defense counsel was also aware that Merriner would prosecute the case. By raising the issues concerning Merriner's participation in questioning Kanulie in midtrial, Kanulie greatly limited the court's options. Had he raised the issue before trial, the court would have had the option of ordering the state to have another attorney prosecute the case. The substitute attorney could have had adequate time to prepare for trial. Alaska Criminal Rule 16(f)(3) requires pretrial motions to be made at the omnibus hearing. Where the defendant does not file a motion before trial, his opportunity to raise the motion is normally forfeited. We conclude therefore that Kanulie forfeited his argument by failing to make the appropriate motion at the omnibus hearing.

■ The next part of Judge Madsen's ruling concerns the fact that District Attorney Merriner was a potential witness. Where an attorney is a potential witness in a case, Disciplinary Rules 5–101(B) and 5–102 of the Code of Professional Responsibility generally require the lawyer to withdraw from a case where it appears that he or a member of his firm will be called to testify regarding a disputed issue of fact. The court in *Paperno* referred to this as the "advocate-witness rule." 445 N.Y.S.2d

at 122, 429 N.E.2d at 800. In applying the advocate-witness rule, the *Paperno* court required defense counsel to establish, in a pretrial motion, either that the prosecutor would be a witness for the state or that the prosecutor could provide testimony which was favorable to the defendant. *Id.* In this case, Judge Madsen concluded that Merriner was not a critical witness because Trooper Campbell was present during the questioning and was available to testify. In addition, Kanulie never made any realistic showing that Merriner's testimony would have been helpful to either side or would have been particularly critical. As the state points out, Kanulie's statement was on videotape; his demeanor and what he said were matters the jury should have been able to discern for themselves. In the event that either side needed to call a witness who was actually present when the statement was taken, Trooper Campbell was available.

■ The second part of Kanulie's objection goes to the fact that Merriner was a witness to Kanulie's videotaped statements and also was an advocate in the trial. Where a prosecutor is in this position, the defendant may be prejudiced by the prosecutor's ability, either directly or indirectly, to inject his own credibility into the trial violating the "unsworn witness rule." In *Paperno*, the court commented that:

Such conduct on the part of the prosecutor amounts to a subtle form of testimony against the defendant, as to which the defendant may have no effective means of cross-examination. Hence, the rule is founded upon the possible danger that the jury, impressed by the prestige of the office of the District Attorney, will accord great weight to the beliefs and opinions of the prosecutor.

*Id.* 445 N.Y.S.2d at 123, 429 N.E.2d at 801. In analyzing this problem, the court stated:

We begin with the proposition that, on a pretrial motion to disqualify the prosecutor, it is incumbent upon the defendant to make an adequate showing that the pretrial activity of the the prosecutor will render his participation in the trial unfair. A mere assertion by the defendant

that he intends to question some aspect of the prosecutor's conduct is insufficient. Rather, the defendant must demonstrate that there is a significant possibility that the prosecutor's pretrial activity will be a material issue in the case. *Id.*

In the instant case not only did Kanulie fail to bring his motion prior to trial, he also failed to show that Merriner's pretrial activities would be a material issue in the case. Kanulie made several statements during the investigation. The statements in question were on videotape and essentially spoke for themselves. In the event that either side needed to call a witness who was present during the statement, Trooper Campbell was available to testify. Judge Madsen directed the prosecutor to not refer to the prosecutor's participation in taking the statement. We conclude that Judge Madsen did not err in allowing the state to introduce into evidence Kanulie's videotaped statements where the prosecutor participated in taking the statements.

■ Kanulie next contends that Judge Madsen violated his fifth amendment rights by asking him questions at sentencing. At sentencing, Kanulie's counsel told the judge that Kanulie was aware of his right to allocution but that he had chosen not to make a statement. Judge Madsen asked Kanulie if he understood that he had a right to make a statement and Kanulie made no response. Judge Madsen proceeded to question Kanulie on how he felt about the offense, about his training in the National Guard, and his drug and alcohol problem. Kanulie never objected to Judge Madsen's questions in the trial court. He raises this issue for the first time on appeal. We therefore review only for plain error.

Judge Madsen's questioning of Kanulie did not appear to elicit any damaging material. In fact, the judge seems to have tried to get a better understanding of Kanulie before he sentenced him and appears to have tried to make sure that Kanulie had every opportunity to exercise his right to allocution. Judge Madsen's questioning of

Kanulie was not prejudicial in any way. We decline to find plain error.

■ Kanulie next argues that his sentence of 304 years was excessive. Kanulie points out that he was twenty-two years at the time of sentencing and that he had no prior criminal record. Three of the professionals who conducted psychological examinations of him concluded that it was doubtful that Kanulie was capable of forming specific intent at the time he committed the murders and the attempted murder. He argues that he presented clear and convincing evidence that his offenses more closely approximated second-degree murder and therefore constituted a least serious offense. *See* AS 12.55.155(d)(9); *Benboe v. State,* 698 P.2d 1230 (Alaska App.1985). He also argues that the psychological examinations established that he committed the crime under some degree of duress or compulsion. *See* AS 12.55.155(d)(3).

We have previously approved sentences in excess of ninety-nine years of imprisonment only in exceptional cases where we have upheld the trial court's finding that the defendant must be sentenced to a lifetime of imprisonment without any possibility of parole. *Weitz v. State,* 794 P.2d 952, 957–58 (Alaska App.1990); *Collins v. State,* 778 P.2d 1171, 1175–76 (Alaska App. 1989); *Hastings v. State,* 736 P.2d 1157, 1160 (Alaska App.1987); *Nukapigak v. State,* 645 P.2d 215, 217 (Alaska App.1982), *aff'd* 663 P.2d 943 (Alaska 1983). We believe that Kanulie's case is an exceptional one which falls within this category. With little provocation, Kanulie killed three people and attempted to kill a fourth. The crime seems inexplicable, and it appears that something in Kanulie just snapped and he decided to go on a killing spree. He essentially hunted his victims down. In sentencing Kanulie, Judge Madsen commented that there was no way to rule out the possibility that Kanulie might snap again in the future and commit another series of homicides. This finding is consistent with the record. Judge Madsen was not clearly mistaken in concluding that it was necessary to isolate Kanulie for the

protection of the community and imposing the sentence which he did.

AFFIRMED.