**Rusty HIGHTOWER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4317.**

Court of Appeals of Alaska.

Dec. 4, 1992.

Thomas E. Fenton, Fairbanks, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

OPINION

BRYNER, Chief Judge.

■ In 1988, the state filed a delinquency petition against Rusty Hightower, alleging various misconduct, including an act of first-degree murder. The state also petitioned for waiver of children's court jurisdiction. Hightower eventually stipulated to waiver and was charged as an adult with first-degree murder. He entered a plea of guilty to the charge. Superior Court Judge Mary E. Greene sentenced Hightower to the maximum term of ninety-nine years. Hightower appeals, contending that this sentence is excessive. We affirm.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

In *R.H. v. State*, 777 P.2d 204, 205–06 (Alaska App.1989), we gave the following description of Hightower's offense and of his personal background:

On the night of March 31, 1988, R.H. and another minor, P.K.M., burglarized a Fairbanks office and stole a pistol, the owner's manual to the pistol, some ammunition, and an extra clip. By reading the owner's manual, R.H. and P.K.M. learned how to operate the gun. They then decided to rob a taxicab driver in order to obtain money for drugs; the boys made plans to kill the driver of the cab.

In the early morning hours of April 1, R.H. and P.K.M. flagged down a cab driven by Dale Baurick and asked to be taken to McGrath road in Fairbanks. Baurick drove the boys there and stopped the cab. R.H., who was seated behind Baurick, fired four shots into Baurick's back. As R.H. fired the shots, Baurick threw a wad of money into the back seat.

After firing the shots, R.H. searched Baurick's pockets, taking a knife from one of them. R.H. then pulled Baurick out of the cab onto the road. Baurick apparently moaned. P.K.M. told R.H. to shoot Baurick, to make sure that he died. R.H. fired another shot into Baurick's head as Baurick lay on the road. R.H. and P.K.M. left the scene, driving Baurick's cab.

Alaska State Troopers investigating the case interviewed R.H. two days later, on April 3, 1988. R.H. gave a videotaped statement confessing to the murder and to the prior burglary in which he stole the murder weapon. The state thereafter petitioned for waiver of children's court jurisdiction over R.H., charging him with murder in the first degree, robbery in the first degree, and other offenses stemming from the burglary and shooting of March 31 and April 1.

R.H. was born on May 22, 1971. At the time of the offenses in this case, he was less than two months away from his seventeenth birthday. R.H.'s parents were divorced in 1979. R.H. first became involved in delinquent behavior in 1977, when he was charged with destroying mail from mailboxes. In 1983, at age twelve, R.H. was charged with harassment and disorderly conduct. The following year, he was involved in a shoplifting.

The 1983 and 1984 offenses apparently occurred when R.H. was living with his mother. In 1985, while living with his father in Delaware, R.H. was charged with possession of marijuana. Later in 1985, after turning fourteen, R.H. was charged with robbery and conspiracy. In early 1986, while awaiting disposition on the robbery charge, R.H. was charged with consuming alcohol, criminal trespass, and criminal misrepresentation. In an apparent effort to avoid Delaware delinquency proceedings, R.H.'s father sent R.H. to live with relatives in California.

Within a short time, in April of 1986, R.H. robbed a woman in California. R.H.'s father evidently misled California authorities, telling them that, for the most part, R.H. had never been in trouble with the law. R.H. was eventually released on probation on condition that he not return to California without being accompanied by a parent.

From California, R.H. was sent to live with his mother in North Pole, Alaska. In March of 1987, while fifteen years old, R.H., in the company of two adults, broke into Moose Creek Lodge and stole alcohol, food, money, and stereo equipment. At sixteen years of age, in August of 1987, R.H. was stopped while driving a stolen pickup truck. An Intoximeter test indicated a breath alcohol level of .08.

The state filed a delinquency petition charging R.H. with burglary, theft, criminal mischief, and consumption of alcohol. On December 4, 1987, R.H. admitted the allegations of the petition. The superior court released him to the custody of his mother pending a disposition hearing. Six days later, R.H. was arrested for shoplifting. Upon arrest, he appeared to have been drinking; a pipe

containing marijuana residue was found on his person.

A disposition hearing was held in superior court in Fairbanks on January 12, 1988. R.H. was placed on probation, on condition that he remain in the custody of his mother, participate in a substance abuse counseling program, and refrain from consuming alcohol or controlled substances.

On March 30, 1988, R.H.'s mother reported to R.H.'s juvenile probation officer that R.H. had stolen $4,000 worth of coins from her boyfriend and had sold them. Less than two days later, R.H. engaged in the fatal shooting of Dale Baurick.

For purposes of this sentence appeal, the only facts of significance we need add to this description pertain to Hightower's status since his arrest on the murder charge. Hightower remained in custody from his arrest in April of 1988 until his sentencing hearing in January of 1992; during this time he committed numerous infractions of prison regulations and was repeatedly subjected to disciplinary proceedings. In the course of his pre-sentence custody—a period of slightly less than four years—Hightower's infractions resulted in his having forfeited more than one and one-half years of good-time credit. At the time of sentencing, Hightower was not enrolled in any of the educational or rehabilitative programs that the Department of Corrections makes available to prisoners.

Based on Hightower's extensive history of delinquency, the seriousness of the murder for which he was convicted, and his poor institutional record, Judge Greene found Hightower to be a dangerous offender whose prospects for rehabilitation were very slight, despite his youth. Judge Greene concluded that Hightower deserved to be classed as a worst offender and, on this basis, imposed the maximum term of ninety-nine years.

On appeal, Hightower argues that the maximum term was inappropriate in his case because his crime was not planned or premeditated. But Judge Greene found otherwise, and the record supports the judge's conclusion. Hightower also maintains that his young age should have precluded the imposition of the maximum term. However, youth alone does not bar the imposition of a maximum term for murder. *See, e.g., Riley v. State,* 720 P.2d 951, 953 (Alaska App.1986); *Ridgely v. State,* 739 P.2d 1299, 1301–02 (Alaska App.1987). Judge Greene was well aware that Hightower's age was a potentially relevant factor to consider in fashioning a sentence, but ultimately concluded that it should not be given determinative weight. The judge stated, in relevant part:

> [I]t's clear to me that youth should only be considered in two ways. One is where the youth of the person contributes to that lack of self-control, impulsive behavior that is typical of youth. Or two, in terms of rehabilitation the, certain—fundamental hope that we all have that as malleable youth[,] people can change. Neither of those things is particularly involved here.

Again, the record supports the judge's conclusion.

As the sentencing court recognized, Hightower was convicted of first-degree murder for a cold-blooded homicide that he had planned in advance and that he carried out either to facilitate the commission of a robbery or for the mere thrill of killing another human being. This conduct places Hightower's crime among the most serious of first-degree murders. Given the seriousness of Hightower's conduct, his extensive history of antisocial behavior, and his poor institutional record, the court did not err in characterizing him as a worst offender. Having independently reviewed the entire sentencing record, we conclude that Hightower's sentence is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

MANNHEIMER, J., not participating.