Byran B. PEROTTI, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4300.

Court of Appeals of Alaska.

Dec. 24, 1992.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Mark I. Wood, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.[*]

OPINION

BRYNER, Chief Judge.

Byran Perotti pled no contest to a charge of first-degree murder. Superior Court Judge Niesje J. Steinkruger sentenced Perotti to a maximum term of ninety-nine years. Perotti appeals, contending that the sentence is excessive. We affirm.

On January 4, 1989, Perotti, then sixteen years old, abducted eighteen-year-old Johnny Jackson from a Fairbanks restaurant where Jackson worked. Perotti drove with Jackson to the Tanana River. After holding Jackson hostage in his car for approximately one and one-half hours, Perotti walked him to an island in the middle of the river, about one hundred yards from the end of Lathrop Street. There, Perotti shot Jackson twice in the head at close range, execution-style, killing him. Perotti then poured gasoline on Jackson's body and attempted to burn it. When this proved unsuccessful, he concealed the body under an embankment of the island.

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Perotti used an automatic teller machine card that he had taken from Jackson to withdraw eighty dollars in cash from Jackson's account. He then told a friend he had killed Jackson, and asked for help in driving Jackson's car to the airport, so it would appear that Jackson had left town. His friend refused.

Over the next several days, Perotti bragged about the murder to other friends, and gloated over his apparent success. To one friend, Perotti said he did not regret the killing, because Jackson "deserved to die." He commented that, "When I shot him and I saw the look in his face I've never been so happy in my life, but at the same time I was sick to my stomach."

Perotti had apparently been planning to kill Jackson since the spring of 1988, and had threatened Jackson, both verbally and physically, on several occasions. Perotti's motive was either jealousy, revenge, or both. In the early spring of 1988, Jackson had taken Perotti's girlfriend out on a date. A month or two later, a school official overheard the girl tell another girl that Jackson had sexually assaulted her. The official reported this conversation. Perotti's girlfriend spoke to the police, but declined to press charges. Although she told Perotti that Jackson had sexually assaulted her, the girl evidently refused to provide him with any details. Jackson adamantly denied any assaultive conduct.

Even though Perotti acknowledged to friends and family members that he did not know what had happened between Jackson and his girlfriend and that he doubted his girlfriend's claim of sexual assault, he became obsessed with the incident, viewing it as a personal affront. On May 11, 1988, Perotti wrote to his girlfriend:

This may sound egotistical, and possessive, but he took something that was mine—it was and is a part of me, it was, is, like he did it to me, even though I don't know what happened or exactly how much he hurt you. But he stole something that is very precious to me, something that cannot be returned. I

want it back, and by doing what I'm going to do, I will gain something that is equally precious to him.

Over the ensuing months, Perotti had repeatedly proclaimed his intent to kill Jackson, telling Jackson, friends of Jackson, and his own friends of his intent.

Fairbanks police discovered Jackson's body four days after the murder, on January 8, 1989. By that time, they had received a number of reports indicating that Perotti had killed Jackson. After obtaining a warrant, the police monitored a conversation between Perotti and a friend, in which Perotti made obviously incriminatory statements. They then arrested him. Evidence seized from Perotti's home after his arrest yielded the murder weapon, a .22 caliber pistol, and established that Perotti had painstakingly planned the abduction and killing.

After filing delinquency proceedings against Perotti, the state secured an order waiving juvenile jurisdiction and permitting Perotti to be prosecuted as an adult. Perotti thereafter entered a negotiated plea of no contest to a single count of first-degree murder, in return for the state's promise to dismiss related charges of kidnapping, first-degree robbery, and tampering with physical evidence.

At Perotti's sentencing hearing, Judge Steinkruger considered extensive evidence concerning Perotti's background, the manner in which he committed the murder, the circumstances that led to the offense, and Perotti's conduct in its aftermath. Judge Steinkruger also considered Perotti's conduct in jail while awaiting disposition of the murder charge—conduct that included a failed escape in which Perotti overpowered a prison guard, took the guard's pistol, and then threatened him with it.[1]

In reviewing this evidence, Judge Steinkruger carefully considered all of the *Chaney* sentencing criteria, *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), paying particularly close attention to Perotti's potential for rehabilitation and to his capacity

---

1. For these offenses, Perotti had been separately convicted of attempted escape and third-degree assault. *See Perotti v. State*, 818 P.2d 700 (Alaska App.1991).

for personal deterrence. Despite her recognition of the heightened significance of rehabilitation and personal deterrence in a case involving a youthful offender, *see Riley v. State*, 720 P.2d 951, 952–53 (Alaska App.1986), Judge Steinkruger determined that Perotti's prospects for rehabilitation were extremely guarded, that he was not readily deterrable, and that, for this reason, neither rehabilitation nor personal deterrence could be given overriding priority in fashioning his sentence.

Based on the circumstances surrounding the offense, Judge Steinkruger found Perotti to be a worst offender, despite his youthfulness. The judge explained her reasons for reaching this conclusion, describing in detail the evidence upon which she relied. Finding Perotti to·be a danger and his case to be comparable to other murder cases in which maximum terms had been approved for youthful offenders,[2] Judge Steinkruger sentenced Perotti to ninety-nine years in prison.

On appeal, Perotti takes issue with the sentencing court's worst-offender finding. Characterizing his offense as the impulsive act of a youthful offender who was understandably frustrated by the criminal justice system's seeming inability to redress a crime committed against his girlfriend, Perotti argues that his case is distinguishable from the type of deliberate and cold-blooded murders—carried out either gratuitously or for pecuniary gain—in which we have previously upheld worst-offender findings.

Yet Perotti advanced precisely the same argument at his sentencing hearing. Judge Steinkruger rejected Perotti's characterization of the crime, expressly finding it to be a deliberate, cold-blooded execution-style murder that Perotti committed for his personal satisfaction. Judge Steinkruger's precise and detailed explanation of her reasons for reaching this conclusion is amply supported by the sentencing record.

Judge Steinkruger was also aware of, and considered, prior cases involving youthful offenders who received maximum murder sentences. Although Judge Steinkruger recognized that, unlike the defendants in some of these cases, Perotti did not commit his crime for pecuniary gain, the judge saw no good reason to distinguish Perotti's case from these cases. We concur in Judge Steinkruger's assessment of the case law and reject Perotti's assertion that a worst-offender finding (and, by extension, a maximum term) can be justified only in cases involving gratuitous homicides or homicides committed for pecuniary gain.

The sentencing record establishes that Perotti's conduct was a far cry from the type of impulsive, heat-of-passion murder that is typically viewed as mitigated. As the sentencing court noted, Perotti was apparently driven to kill by a relentless and obsessive desire for personal satisfaction; what might actually have happened to his girlfriend was clearly secondary to Perotti—almost immaterial. Perotti's statements in the aftermath of the murder establish that he did in fact derive personal gratification from his acts and was remorseless—that he viewed his conduct as justified and his victim as deserving.

Under the circumstances, Judge Steinkruger could properly have found that the fact that Perotti acted for personal reasons other than pecuniary gain was inconsequential. Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

MANNHEIMER, J., not participating.

---

**2.** *See, e.g., Ridgely v. State*, 739 P.2d 1299 (Alaska App.1987); *Lewis v. State*, 731 P.2d 68 (Alaska App.1987); *Riley v. State*, 720 P.2d 951 (Alaska App.1986); *Cassell v. State*, 645 P.2d 219 (Alaska App.1982). *See also Denbo v. State*, 756 P.2d 916, 918 (Alaska App.1988).