**Kira GRAY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10305.**

Court of Appeals of Alaska.

Dec. 9, 2011.

David K. Allen, Attorney at Law, Sechelt, B.C., Canada, for the Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Richard A. Svobodny, Acting Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### OPINION

BOLGER, Judge.

Alaska Statute 47.12.030(a) provides that when a sixteen-year-old minor commits certain serious felonies, including murder, the minor "shall be charged, held, released on bail, prosecuted, sentenced, and incarcerated in the same manner as an adult." Kira Gray argues that her sentence for first-degree murder violates the constitutional protections against cruel and unusual punishment and the constitutional guarantees of equal protection because she was a minor at the time of her offense. But we conclude that this combination of the automatic waiver statute and the adult sentencing statute is consistent

1. *See* AS 47.12.030(a).

with "evolving standards of decency" and that this scheme bears a fair and substantial relationship to the legitimate purposes of punishment.

Gray also argues that her sentence of sixty-five years to serve is excessive for a murder and kidnapping she committed when she was sixteen years old. But we conclude that the sentencing judge gave her rehabilitative prospects "careful scrutiny and appropriate weight" and that the resulting sentence was not clearly mistaken.

### Background

Gray was sixteen years old and dating Mario Page, an Anchorage drug dealer. While Page was out of state, Gray stole nine ounces of cocaine from Page and gave it to her sister's boyfriend, Terrell Houngues. When Page returned and found out about the theft, he became angry.

Gray concocted a plan to pacify Page. She falsely told Houngues that she had had an argument with Page and that she knew where Page hid money and drugs. She suggested to Houngues that they should steal Page's money and drugs. This plan was simply a ruse to kidnap Houngues.

Gray picked up Houngues and drove him to a remote location in the Mat–Su Valley. Page and three other men then arrived in a separate car and forced Houngues into the trunk. They drove to another spot and removed Houngues from the trunk. Page demanded to know what became of the nine ounces of stolen cocaine. When Houngues denied any knowledge of the drugs, Gray shot him in the knee. Houngues was then screaming in pain, so Page told Gray to "shut him up." Gray and another man, Tommie Patterson, then shot Houngues multiple times, killing him.

Gray was charged and prosecuted as an adult based on the statute that automatically waives juvenile jurisdiction for certain serious crimes.[1] Prior to trial, Gray made a motion for the court to declare the automatic waiver statute unconstitutional, but Superior Court Judge Eric Smith denied the motion.

Gray, Page, and Patterson were convicted of murder and kidnapping in separate trials.[2]

At the sentencing hearing, Gray presented testimony from two mental health professionals. Drs. Marty Beyer and Ronald Roesch provided opinions on developmental immaturity in general, along with specific opinions about Gray's mental state. Dr. Beyer testified that Gray "showed a variety of kinds of immature thinking ... that led to irrational behavior and poor moral reasoning, especially when she felt coerced." Dr. Beyer also testified that juvenile sentences should be less punitive than adult sentences and should generally provide more and earlier opportunities for parole or release because most juvenile offenders are very immature and have "a huge amount of developing still to do."

Dr. Roesch testified that Gray was "amenable to rehabilitation and that she does have a high potential for change." Like Dr. Beyer, Dr. Roesch emphasized that, in crafting a juvenile sentence, the court must take developmental differences between juveniles and adults into consideration.

At the conclusion of the sentencing hearing, Judge Smith imposed a sentence of ninety-nine years' imprisonment with forty-four years suspended for Gray's murder conviction and a consecutive sentence of ten years' imprisonment for kidnapping. Gray now appeals.

### Discussion

*The automatic waiver statute does not constitute cruel and unusual punishment.*

As noted above, when a sixteen-year-old minor commits certain serious felonies, the minor is "prosecuted, sentenced, and incarcerated in the same manner as an adult."[3] Under this statute, a minor convicted of first-degree murder is subject to the same sentence as an adult—generally a sentence of twenty to ninety-nine years' imprisonment.[4] Gray argues that this statutory scheme violates the state and federal prohibitions against cruel and unusual punishment[5] because the statutes do not recognize the differences in culpability between juveniles and adults by providing for early eligibility for discretionary parole.

Gray relies mainly on two recent decisions from the United States Supreme Court: *Roper v. Simmons*[6] and *Graham v. Florida*.[7] In *Roper*, the Court concluded that the Eighth Amendment bars the execution of individuals who were juveniles at the time they committed murder.[8] In *Graham*, the Court concluded that the Eighth Amendment forbids a juvenile from being sentenced to life without parole for a nonhomicide crime.[9]

In both cases, the Court applied a test that focuses on the characteristics of the offender, considering whether there is a "national consensus" against the imposition of the sentence in question and whether the sentence is categorically unconstitutional.[10] The Court concluded that

> juveniles (as a group) are "less deserving of the most severe punishments" because, compared to adults, they exhibit a "lack of maturity and an underdeveloped sense of responsibility," because they are "more vulnerable or susceptible to negative influences and ... peer pressure," and because their characters are "not as well formed."[11]

2.  *See Patterson v. State*, Mem. Op. & J. No. 5713, 2011 WL 2518952 (Alaska App. June 22, 2011); *Page v. State*, Mem. Op. & J. No. 5548, 2009 WL 6327506 (Alaska App. Dec. 2, 2009).

3.  AS 47.12.030(a).

4.  *See* AS 12.55.125(a).

5.  U.S. Const. amend. VIII; Alaska Const. art. I, § 12.

6.  543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

7.  — U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

8.  543 U.S. at 574–75, 125 S.Ct. 1183.

9.  130 S.Ct. at 2030.

10. *Id.* at 2022 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 421, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008); *Roper*, 543 U.S. at 572, 125 S.Ct. 1183).

11. *Smith v. State*, 258 P.3d 913, 920 (Alaska App.2011) (quoting *Graham*, 130 S.Ct. at 2026).

Under the Alaska Constitution, we have generally applied a different test when we have focused on the characteristics of the penalty imposed. We have asked whether the punishment is so disproportionate to the offense as to be completely arbitrary and shocking to a sense of justice.[12] But in a case where the Alaska Supreme Court focused on the characteristics of the offender, it applied a test similar to the test employed in *Roper* and *Graham*, asking whether the sentence violated "the evolving standards of decency that mark the progress of a maturing society."[13] The present case focuses on Gray's status as a juvenile. We will therefore focus on national standards and categorical considerations to decide whether a juvenile can be sentenced to an adult sentence for first-degree murder.[14]

The Wisconsin Supreme Court recently considered a similar question in *State v. Ninham*.[15] Omer Ninham was sentenced to life in prison without the possibility of parole for first-degree intentional homicide.[16] On appeal, Ninham argued that sentencing a fourteen-year-old to life imprisonment violates the Eighth Amendment.[17]

The Wisconsin court considered whether sentencing a fourteen-year-old to life without parole is inconsistent with evolving standards of decency.[18] It noted that *Graham* only prohibited life without parole for nonhomicide offenses and that *Roper* prohibited capital punishment of juveniles.[19] But neither

case directly addressed the constitutionality of a sentence of life imprisonment without parole for an intentional homicide.[20]

The Wisconsin court evaluated whether there is a national consensus against sentencing minors to life without parole for intentional homicides.[21] It found that forty-four states allow life imprisonment without parole for homicide offenses for juveniles.[22] Moreover, although few juveniles age fourteen or younger have ever been sentenced to life without a possibility of parole, the court concluded that the statistic did not necessarily show there was a consensus against such a penalty.[23] In summary, the court concluded that there is no national consensus against a sentence of life imprisonment without parole for an intentional homicide committed by a minor.[24]

■ In addition to our review of any national consensus, we also have a responsibility to exercise our independent judgment regarding whether an adult sentence for a minor convicted of murder serves legitimate penological goals.[25] The research that Gray relies on suggests that some minors may have a greater potential for rehabilitation and that there is a lesser need to isolate them to protect the public.[26] This is consistent with our previous recognition that rehabilitation and individual deterrence should be accorded "careful scrutiny and appropriate weight" in cases involving youthful first offenders convicted of first-degree murder.[27]

**12.** *See, e.g., Green v. State*, 390 P.2d 433, 435 (Alaska 1964); *McNabb v. State*, 860 P.2d 1294, 1298 (Alaska App.1993).

**13.** *Abraham v. State*, 585 P.2d 526, 531, 533 (Alaska 1978) (quoting *Rust v. State*, 582 P.2d 134, 142 (Alaska 1978)) (holding that a traditional Alaska Native who did not speak much English could be sentenced to imprisonment outside his local area).

**14.** *See generally Hosier v. State*, 976 P.2d 869, 870–71 (Alaska App.1999) (holding that the "excessive bail" clause of the Alaska Constitution should be interpreted similarly to its federal counterpart).

**15.** 333 Wis.2d 335, 797 N.W.2d 451 (2011), *petition for cert. filed*, (U.S. Sept. 16, 2011) (No. 11–6494).

**16.** *Id.* at 460.

**17.** *Id.* at 462.

**18.** *Id.* at 466.

**19.** *Id.* at 467.

**20.** *Id.*

**21.** *Id.*

**22.** *Id.* at 468.

**23.** *Id.*

**24.** *Id.* at 468–69.

**25.** *Graham*, 130 S.Ct. at 2026.

**26.** *Id.* at 2029.

But a lengthy sentence for the crime of murder promotes other goals. A lengthy sentence affirms the important community norms that protect the value of a human life.[28] And a lengthy sentence can serve as an important deterrent to potential homicide offenders, even when the offenders are juveniles.[29]

Several other courts considering the question have distinguished *Graham* and held that a life sentence can be imposed on a juvenile convicted of murder without violating the ban on cruel and unusual punishment.[30] We conclude that sentencing a minor to an adult sentence for first-degree murder is not categorically unconstitutional.

Gray did not receive a life sentence; she received a sentence of only sixty-five years' imprisonment. She will be eligible for discretionary parole after serving twenty-five years of her sentence.[31] But Gray argues that this sentencing scheme involves cruel and unusual punishment because it does not allow for early eligibility for discretionary parole.

■ As noted above, the combination of the automatic waiver statute and the adult sentencing statutes promotes various penological goals, especially the goals of general deterrence and affirmation of societal norms. In view of these legitimate legislative considerations, we conclude that the difficulty in applying the goals of rehabilitation and iso-

lation to a juvenile offender does not render this scheme unconstitutionally cruel. The legislature could reasonably determine that, when a minor is convicted of first-degree murder, general sentencing considerations require a substantial delay before the minor becomes eligible for discretionary parole. This aspect of the operation of the automatic waiver statute does not constitute cruel and unusual punishment.

*The automatic waiver statute does not violate Gray's right to equal protection.*

■ Gray also argues that the automatic waiver statute violates her right to equal protection of the law.[32] We apply a three-part "sliding scale" test to analyze this claim under the Alaska Constitution: we first determine the importance of the individual interest impaired by the statute; we next examine the importance of the state's purposes underlying the statute; and, finally, we evaluate the relationship between the state's purposes and the means employed in the statute.[33]

■ Applying step one of this test, Gray has "no constitutional right to be tried in a juvenile court."[34] Her interest in avoiding adult penalties implicates only "the relatively narrow interest of a convicted offender in minimizing the punishment for an offense."[35] This narrow interest requires only "legitimate" state purposes to justify the statute.[36]

---

**27.** *Riley v. State*, 720 P.2d 951, 953 (Alaska App. 1986).

**28.** *See Martin v. State*, 664 P.2d 612, 620 (Alaska App.1983); *Weston v. State*, 656 P.2d 1186, 1191–92 (Alaska App.1982), *rev'd on other grounds*, 682 P.2d 1119 (Alaska 1984).

**29.** *See Riley*, 720 P.2d at 952–53; *see also Roper*, 543 U.S. at 572, 125 S.Ct. 1183.

**30.** *See, e.g., Loggins v. Thomas*, 654 F.3d 1204, 1220–26 (11th Cir.2011); *Jackson v. Norris*, 2011 Ark. 49, — S.W.3d ——, ——–——, 2011 WL 478600 (2011); *Gonzalez v. State*, 50 So.3d 633, 635–36 (Fla.Dist.App.2010); *Evans v. State*, — So.3d ——, 2011 WL 2323016 (Miss.App.2011); *State v. Andrews*, 329 S.W.3d 369, 376–77 (Mo. 2010); *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198, 215–16 (2011). The United States Supreme Court recently granted certiorari in two cases to determine the constitutionality of sentencing juveniles to life in prison without the possibility of

parole in murder cases. *See Jackson v. Hobbs*, — U.S. ——, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011); *Miller v. Alabama*, — U.S. ——, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011).

**31.** *See* AS 12.55.125(a)-(b); AS 33.16.090(b)(7)(A).

**32.** U.S. Const. amend. XIV, § 1; Alaska Const. art. I, § 1.

**33.** *See Williams v. State*, 151 P.3d 460, 464 (Alaska App.2006).

**34.** *W.M.F. v. State*, 723 P.2d 1298, 1300 (Alaska App.1986).

**35.** *State v. Ladd*, 951 P.2d 1220, 1224 (Alaska App.1998) (quoting *Anderson v. State*, 904 P.2d 433, 436 (Alaska App.1995)).

**36.** *See Williams*, 151 P.3d at 464.

■ The second step of the test requires us to identify the purposes for this legislation. The waiver statute provides that certain minors are subject to prosecution and punishment as adults. We therefore refer to the purposes of criminal administration that apply to all offenders: "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation." [37] These constitutional requirements encompass a number of legitimate sentencing goals:

> Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.[38]

These goals give the State "a strong and direct interest in establishing penalties for criminal offenders and in determining how those penalties should be applied to various classes of convicted felons." [39]

To apply the third step of the equal protection test, we must assess the relationship between these legitimate legislative goals and the methods employed in the statute. Because Gray's interest is relatively narrow, the constitution requires only a "substantial relationship" between the legislative goals and the automatic waiver statute.[40] "In deciding which minors should receive juvenile delinquency dispositions for criminal acts, the legislature can draw distinctions between different groups so long as those distinctions are not arbitrary or based on a discriminatory classification." [41]

■ The waiver statute makes a distinction between minors who are charged with a class A or an unclassified felony offense (who are prosecuted as adults) and minors charged with less serious crimes (who are presumptively prosecuted as juveniles).[42] This distinction is based in turn on the classification system itself—class A felonies "characteristically involve conduct resulting in serious physical injury or a substantial risk of serious physical injury to a person." [43] Other felonies and misdemeanors generally involve less serious misconduct.[44]

This classification of penalties, based on the gravity of the offense, bears a substantial relationship to the purposes of punishment that are constitutionally required. "A sentencing system that specifies progressively harsher penalties for progressively more serious classes of offenses is neither novel nor impermissible. This is a form of classification that has traditionally been recognized and upheld as rational." [45]

In particular, we have recognized the rationality of the sentencing range for first-degree murder: "Legislatures have traditionally reserved the highest penalties for intentional homicide. Our legislature could reasonably label it an unclassified offense and conclude that a minimum twenty-year sentence was necessary for affirmation of community norms and deterrence of others." [46] Thus, we conclude that the sentenc-

---

37. Alaska Const. art. I, § 12.

38. *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

39. *Anderson v. State,* 904 P.2d 433, 436 (Alaska App.1995) (citing *Dancer v. State,* 715 P.2d 1174, 1180–81 (Alaska App.1986)).

40. *See Williams,* 151 P.3d at 464.

41. *Ladd,* 951 P.2d at 1225.

42. AS 47.12.030(a)(1)-(2), (4). Some juveniles convicted of class B felonies are also subject to automatic waiver based on their prior convictions. AS 47.12.030(a)(3).

43. AS 11.81.250(a)(1).

44. AS 11.81.250(a)(2)-(6).

45. *Brown v. State,* 926 P.2d 1195, 1199 (Alaska App.1996).

46. *Martin v. State,* 664 P.2d 612, 620 (Alaska App.1983).

ing range for murder is substantially related to legitimate sentencing goals that emphasize the uniquely serious nature of this crime.

Likewise, there is a reasonably close fit between the purposes of punishment and the automatic waiver statute. The legislature could reasonably conclude that the more lenient provisions of the juvenile system should not be available for those who commit the most serious crimes: "This indication of dangerousness is reasonably related to the criteria for deciding whether a minor should be dealt with under the juvenile system or the adult system." [47] We thus conclude that the automatic waiver statute bears a substantial relationship to the legitimate purposes of punishment, consistent with the equal rights clause of the Alaska Constitution.

■ The test for equal protection claims under the federal Constitution is less stringent than the three-part test for claims under the Alaska Constitution. Since the automatic waiver statute complies with the equal protection clause of the Alaska Constitution, it also complies with the Equal Protection Clause of the federal Constitution. [48]

*Gray's sixty-five year sentence is not excessive.*

■ Gray also argues that her composite sentence of sixty-five years' imprisonment is excessive. When imposing this sentence, the judge was required to consider the same sentencing objectives we referenced in the previous section. [49] The weight and priority of these criteria are up to the discretion of the sentencing judge. [50] We will reverse the sentence after an independent review of the record, only if the judge's sentencing decision was clearly mistaken. [51] In making this determination, we examine the facts of this case "in light of the total range of sentences authorized by the legislature." [52]

In this case, the sentencing judge made extensive findings concerning the sentencing goals and their application. He found that Gray had used her close relationship with Houngues to trick him into getting into her car, and then executed him at Page's request. The judge concluded that this "particularly heinous crime" would have justified a composite sentence of 109 years to serve for a typical adult offender.

The judge found that Gray was well aware that her boyfriend was involved with a lifestyle involving drugs and violence. She actively participated because of her immaturity—she thought this lifestyle was romantic and exciting. The judge found that Gray was probably not as passive as she seemed to the mental health experts; he noted that she lied to the troopers and to her sister to cast her behavior in a favorable light. Her participation in Houngues's execution was particularly serious because she shot him repeatedly until her gun was empty.

On the other hand, the judge found that Gray was actually scared that Page would retaliate if she did not rectify her theft of his cocaine. She participated in rehabilitative programs while she was held in jail pending trial and sentencing. And although she did not make a formal apology, she did express genuine remorse to the mental health evaluators. The judge decided that her immaturity and her rehabilitative potential required him to substantially reduce the 109–year sentence that would otherwise be warranted by her conduct. He suspended forty-four years of the sentence, leaving Gray with sixty-five years to serve.

■ This sentence is less serious than many sentences we have approved for juvenile offenders convicted of first-degree murder. In *Perotti v. State,* we affirmed a ninety-nine-year sentence for a sixteen-year-old defendant who committed an execution-style murder. [53] In *Hightower v. State,* we af-

**47.** *Ladd,* 951 P.2d at 1225.

**48.** *See Stanek v. Kenai Peninsula Borough,* 81 P.3d 268, 272 (Alaska 2003).

**49.** AS 12.55.005; *see Chaney,* 477 P.2d at 444.

**50.** *State v. Wentz,* 805 P.2d 962, 964 (Alaska 1991).

**51.** *McClain v. State,* 519 P.2d 811, 813 (Alaska 1974).

**52.** *Wentz,* 805 P.2d at 965 (emphasis omitted).

**53.** 843 P.2d 649, 651 & n. 2 (Alaska App.1992) (collecting cases involving youthful offenders convicted of first-degree murder).

firmed a ninety-nine-year sentence for a six-teen-year-old defendant who committed first-degree murder during the robbery of a cabdriver.[54] In *Riley v. State*, we affirmed a ninety-nine-year sentence for an eighteen-year-old defendant, with no prior criminal record, who set up the murder of her husband in order to pursue an affair with another man.[55] And in *Ridgely v. State*, we affirmed ninety-nine-year sentences for a sixteen-year-old defendant convicted of first-degree murder, first-degree burglary, and second-degree theft, and a seventeen-year-old defendant convicted of second-degree murder and second-degree theft.[56]

Gray argues that the testimony of her mental health evaluators and the recent research on brain development require a more lenient sentence. But we conclude that Judge Smith gave Gray's prospects for reha-bilitation "careful scrutiny and appropriate weight," as we have previously required.[57] An execution-style murder is a particularly serious offense, and the sentencing goals of general deterrence and affirmation of societal norms are especially important for this offense.[58] Based on our independent review of the record, we conclude that the sentencing decision was not clearly mistaken.

### Conclusion

We AFFIRM the superior court's judgment and sentence.

**54.** 842 P.2d 159, 160–61 (Alaska App.1992).

**55.** 720 P.2d 951 (Alaska App.1986).

**56.** 739 P.2d 1299 (Alaska App.1987).

**57.** *Riley,* 720 P.2d at 953.

**58.** *See Perotti,* 843 P.2d at 651.