NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

PHILIP CHAD WILSON,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13880
Trial Court No. 3AN-18-010894 CI

O P I N I O N

No. 2811 — August 1, 2025

Appeal from the Superior Court, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Justin N. Gillette, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge TERRELL, writing for the Court and concurring separately.

In 1994, Philip Chad Wilson fatally shot Allen C. Boulch as part of a planned robbery. Wilson, who was seventeen at the time of the offense, ultimately pleaded guilty to first-degree murder and was sentenced to 99 years, with discretionary

parole eligibility after serving 33 years.[1] As a result, Wilson will be eligible to apply for discretionary parole release when he is roughly fifty years old.

Subsequently, the United States Supreme Court decided a series of cases clarifying that "children are constitutionally different from adults for purposes of sentencing" and requiring special consideration of a juvenile offender's youthfulness before imposing a sentence of life without parole.[2] In *Fletcher v. State*, we relied on this line of cases and the Alaska Constitution to extend these protections to situations where a court imposes a *de facto* sentence of life without parole.[3]

Wilson filed an application for post-conviction relief, arguing that his sentence was illegal in light of those cases. The superior court dismissed his application for failing to state a *prima facie* case. Wilson now appeals.

On appeal, Wilson argues that he received a *de facto* life sentence for two reasons. First, he argues Alaska's discretionary parole system lacks key procedural safeguards and is too speculative to qualify as a meaningful opportunity for release. Further, without discretionary parole release, his sentence amounts to a *de facto* life sentence. Second, and alternatively, he argues that even if he were granted discretionary parole at the first available opportunity, the fact that he must serve at least 33 years before becoming eligible for release amounts to a *de facto* life sentence.

We conclude that Wilson's challenges to the Alaska Parole Board's procedures are premature because he has not yet gone through a parole hearing. And we hold that 33 years of incarceration is not a *de facto* life sentence. As a result, we affirm the superior court's dismissal.

---

[1]   *See* former AS 33.16.100(d) (1994).

[2]   *Miller v. Alabama*, 567 U.S. 460, 471 (2012); *see also Roper v. Simmons*, 543 U.S. 551, 569-70 (2005); *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Montgomery v. Louisiana*, 577 U.S. 190, 209-10 (2016); *Jones v. Mississippi*, 593 U.S. 98, 105-06 (2021).

[3]   *See Fletcher v. State*, 532 P.3d 286, 307-08 (Alaska App. 2023).

*Background facts and proceedings*

In 1994, Wilson and three other juveniles planned to rob and murder Allen C. Boulch, another seventeen-year-old who knew Wilson.[4] Under the pretext of going target shooting, Wilson and the three others lured Boulch into Kincaid Park, then shot Boulch in the back multiple times and divided the cash from his pockets among themselves.[5] For this conduct, Wilson pleaded guilty to a single count of first-degree murder with open sentencing.[6]

At the sentencing hearing, the court found that Wilson was the instigator of the planned robbery and killing, that he fired the first shots into Boulch's back, and that he did so "just for the fun of it."

The court sentenced Wilson to 99 years and did not restrict his eligibility for discretionary parole beyond the statutory minimum. Wilson is thus eligible for discretionary parole after serving 33 years, when he is approximately fifty years old.[7]

*Changes in law governing juvenile sentencing requirements*

Following Wilson's sentencing, the United States Supreme Court declared that "children are constitutionally different from adults for purposes of sentencing."[8] In *Graham v. Florida*, the Supreme Court held that the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution categorically bars a sentence of life without the possibility of parole for juveniles convicted of nonhomicide

---

[4]    *Moore v. State*, 1996 WL 499526, at *1 (Alaska App. Sept. 4, 1996) (unpublished).

[5]    *Id.*

[6]    *Id.*

[7]    *See* former AS 33.16.100(d) (1994).

[8]    *Miller v. Alabama*, 567 U.S. 460, 471 (2012); *see also Roper v. Simmons*, 543 U.S. 551, 569-70 (2005); *Graham v. Florida*, 560 U.S. 48, 68 (2010); *Montgomery v. Louisiana*, 577 U.S. 190, 209-10 (2016); *Jones v. Mississippi*, 593 U.S. 98, 105-06 (2021).

offenses.[9] The Court explained that while a state is "not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," the State must afford "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."[10] In *Miller v. Alabama*, the Court extended the reasoning underlying *Graham* to juveniles who have been convicted of homicide crimes, noting that nothing about the characteristics of juveniles relied on in *Graham* was "crime-specific."[11]

Drawing in part on these federal cases, we recently clarified in *Fletcher v. State* that the Alaska Constitution requires sentencing courts "to affirmatively consider the juvenile offender's youth and its attendant characteristics and to provide an on-the-record sentencing explanation that explicitly or implicitly finds that the juvenile offender is one of the 'rare' juvenile offenders 'whose crime reflects irreparable corruption'" before imposing "a sentence of life without parole (or its functional equivalent) on a juvenile offender tried as an adult."[12] We held that a sentence is equivalent to life without parole if it "does not provide a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'"[13] We further held

_____

[9] *Graham*, 560 U.S. at 74, 82.

[10] *Id.* at 75.

[11] *Miller*, 567 U.S. at 473. The Supreme Court clarified in *Jones v. Mississippi* that *Miller* did not require anything more than the existence of a discretionary sentencing scheme under which such findings could be made. *See Jones*, 593 U.S. at 105. Because Wilson was sentenced under a discretionary sentencing scheme where such findings could be made, his sentence did not violate the Eighth Amendment under the federal constitution.

[12] *Fletcher v. State*, 532 P.3d 286, 308 (Alaska App. 2023) (quoting *Miller*, 567 U.S. at 479-80).

[13] *Id.* at 312 (quoting *Graham*, 560 U.S. at 75).

that requiring a juvenile offender to serve 45 years or more in prison before any type of parole release qualifies as a *de facto* life sentence.[14]

*Post-conviction relief proceedings and appeal*

In 2018, Wilson filed a *pro se* post-conviction relief application, arguing that his sentence was illegal in light of *Miller*. He was then appointed counsel, who filed an amended application for post-conviction relief. The amended application alleged that the sentence violated the United States and Alaska Constitutions because Wilson received a *de facto* life sentence without an individualized sentencing hearing where the court took into account the unique qualities differentiating children from adults. The State filed a motion to dismiss for failure to state a *prima facie* claim.

The superior court granted the motion to dismiss. The superior court ruled that Wilson was not subject to a sentence of life without the possibility of parole because he was subject to discretionary parole after 33 years. The superior court also ruled that the sentencing judge properly considered Wilson's youth and its attendant characteristics as required by *Miller*.

Wilson now appeals, arguing that his sentence violated *Fletcher* because he received a *de facto* life sentence without a proper consideration of his youth and attendant circumstances.[15] Wilson argues that his sentence is a *de facto* life sentence for

---

[14] *Id.* at 319-20. Both holdings in *Fletcher* apply retroactively. *State v. Fletcher*, 555 P.3d 1046, 1047-51 (Alaska App. 2024) (affirming the superior court's conclusion on remand that our holding in *Fletcher* was retroactive and therefore that Fletcher had to be resentenced).

[15] Because we had not yet decided *Fletcher*, nor was there any other Alaska case interpreting Article I, Section 12's protections for juvenile offenders in light of *Miller*, the superior court did not decide whether Wilson's sentence complied with *Fletcher* or how Article I, Section 12's protections may have differed from the Eighth Amendment's protections. Despite this, we address and decide Wilson's argument that his sentence violated *Fletcher* on the merits for three reasons. First, Wilson explicitly argued that his sentence violated the Alaska Constitution in his application for post-conviction relief. Second, on appeal, both parties fully briefed *Fletcher*'s applicability. And third, the issue

two reasons. First, he argues that Alaska's discretionary parole procedures do not provide a meaningful opportunity for release under *Fletcher*, meaning he will have to serve a minimum of 66 years (*i.e.*, until he is released on mandatory parole) before being released. Second, and alternatively, he argues that his sentence is a *de facto* life sentence under *Fletcher* because he will have to serve a minimum of 33 years before being eligible for release on discretionary parole.

We address Wilson's contentions in reverse order. First, we conclude that requiring Wilson to serve 33 years before being eligible for discretionary parole is not a *de facto* life sentence. Second, we conclude that Wilson has not yet shown a violation of *Fletcher* because Wilson's challenges to the discretionary parole system are premature. We therefore affirm the superior court's dismissal of Wilson's application for post-conviction relief.

### *Why we conclude that a sentence that requires 33 years' incarceration is not a <u>de facto</u> life without parole sentence*

Under *Fletcher*, a juvenile offender cannot receive a *de facto* life sentence unless, *inter alia*, the sentencing court "affirmatively consider[s] the juvenile offender's youth and its attendant characteristics."[16] Wilson argues that requiring him to serve 33 years before being eligible to apply for release amounts to a *de facto* life sentence. We disagree.

In *Fletcher*, we determined that "a sentence that allows an opportunity for release only after 45 years is a *de facto* life without parole sentence based primarily on

---

of whether a sentencing court complied with *Fletcher* is a pure question of law. *See State v. Blank*, 90 P.3d 156, 162 (Alaska 2004) (addressing the merits of an issue that the lower court did not rule upon because the issue raised a "pure question of law" and it was "more expeditious" to reach it on appeal). We therefore address this argument on the merits rather than remanding to the superior court for it to apply *Fletcher* in the first instance.

[16]   *Fletcher*, 532 P.3d at 308 (citing *Miller*, 567 U.S. at 479-80).

the changing landscape of juvenile sentencing practices post-*Miller*."[17] We reached this result by "look[ing] at 'the evolving standards of decency that mark the progress of a maturing society.'"[18] This included "a review of objective indicia of consensus, as expressed in particular by the enactments of legislatures that have addressed the question."[19] A review of these "objective indicia" showed that no other state that had adopted a post-*Miller* legislative enactment allowed for a sentence of 45 years before parole eligibility.[20] Likewise, no state supreme court that expanded the protections of *Miller* under its state constitution had approved of a sentence where the first possibility of release occurs after 45 years.[21]

Our review of Alaska case law and legislation was consistent with this conclusion.[22] Under Alaska case law, Fletcher's overall sentence (135 years with discretionary parole after 45 years) required the sentencing court to find that protection of the public necessitated that "[Fletcher] must spend the rest of [her] life in prison without any possibility of parole."[23] Likewise, the Alaska's legislature created a geriatric release program in 2016 that allows defendants convicted of most crimes to be eligible for geriatric release after the age of sixty — the same age Fletcher would be when she first became eligible for release.[24] In sum, a review of practices across the

---

[17]  *Id.* at 319-20.

[18]  *Id.* at 320 (quoting *Gray v. State*, 267 P.3d 667, 671 (Alaska App. 2011)).

[19]  *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 564 (2005)).

[20]  *Id.* at 320 & nn.215-17.

[21]  *Id.* at 320 n.218.

[22]  *Id.* at 321 (citing *Thompson v. State*, 768 P.2d 127, 133-34 (Alaska App. 1989)); SLA 2016, ch. 36, § 123; *see also* AS 33.16.090(a)(2).

[23]  *Fletcher*, 532 P.3d at 321 (quoting *Thompson*, 768 P.2d at 134).

[24]  *Id.* at 322 (citing SLA 2016, ch. 36, § 123).

United States and in Alaska showed a "clear and consistent trend" that a sentence of 45 years was a *de facto* life sentence.[25]

By contrast, a review of the "objective indicia" across other jurisdictions and Alaska law does not indicate that 33 years is a *de facto* life sentence. Multiple state supreme courts and legislatures have approved juvenile sentences of 33 years or more before parole eligibility.[26] Likewise, under Alaska law, Wilson's overall sentence did not require a special finding that public safety required that he "spend the rest of his life in prison."[27] To the contrary, the sentencing judge expressly stated that Wilson's sentence would give Wilson the opportunity to be released on parole.[28] Wilson will also first become eligible to apply for discretionary parole at the age of fifty — a full decade before Alaska's geriatric release program begins.[29] As a result, we hold that Wilson's

---

[25] *Id.* at 320.

[26] *See, e.g.*, *State v. Lopez*, 261 A.3d 314, 320 (N.H. 2021) (upholding a discretionary 45-year-minimum sentence); *State v. Quevedo*, 947 N.W.2d 402, 410-11 (S.D. 2020) (upholding discretionary sentence of 90 years, after consideration of *Miller* factors, with eligibility for parole after 45 years); *State v. Booker*, 656 S.W.3d 49, 66 (Tenn. 2022) (concluding that defendant was entitled to have applied to him a previous parole statute, which allowed for discretionary parole after serving up to 36 years); Ariz. Rev. Stat. Ann. § 13-751(A)(2) (providing that a defendant sentenced to life may not be released until completing 35 years of their sentence, depending on the age of the victim); 18 Pa. Cons. Stat. § 1102.1 (providing that a defendant who is at least 15 years old at the time of commission serve at least 35 years of their sentence).

[27] *Thompson*, 768 P.2d at 133-34.

[28] Specifically, the sentencing court stated the following at the conclusion of its sentencing remarks: "There is some question with such a sentence whether Mr. Wilson will be released. . . . But in the event he is, the court leaves the conditions of that release up to the parole board."

[29] SLA 2016, ch. 36, § 123.

sentence that requires he serve at least 33 years before becoming eligible for release is not a *de facto* life sentence.[30]

*Why we conclude that Wilson's challenge to whether Alaska's parole system will provide him with a meaningful opportunity to obtain release is premature*

Under *Fletcher*, a sentence that does not provide a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" is unconstitutional when imposed on a juvenile offender convicted of homicide whose crime reflects "unfortunate yet transient immaturity" rather than "irreparable corruption."[31] Additionally, before imposing such a sentence on a juvenile, the sentencing court must, *inter alia*, "affirmatively consider the juvenile offender's youth and its attendant characteristics."[32] For purposes of this appeal, we assume Wilson did not receive a *Fletcher*-compliant sentencing hearing.[33] In such situations, we recognized

---

[30]  Wilson also cites to two studies on the life expectancy of prisoners in support of his argument that 33 years is a *de facto* life sentence. As we discussed in *Fletcher*, "[n]umerous studies have indicated that incarcerated juveniles have a shorter life expectancy than nonincarcerated juveniles of the same race and gender, with some studies showing an average life expectancy of only fifty years for some juvenile prisoners." *Fletcher*, 532 P.3d at 313. But as *Fletcher* also noted, "many courts have eschewed the use of life expectancy tables in this context, concluding that the determination of whether the principles of *Miller* or *Graham* apply in a given case should not 'turn on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates.'" *Id.* at 314 (quoting *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013)). We did not base our decision in *Fletcher* on life expectancy studies, and we likewise decline to do so in this case.

[31]  *Fletcher*, 532 P.3d at 312 (quoting *Miller v. Alabama*, 567 U.S. 460, 479-80 (2012)).

[32]  *Id.* at 308 (citing *Miller*, 567 U.S. at 479-80).

[33]  Although we need not decide the question of whether Wilson's sentencing hearing complied with *Fletcher*, we note that the sentencing court made, as the State describes, multiple statements that "reflect [the court] was unaware of or did not accept the research on juvenile brain development . . . on which *Roper*, *Graham*, *Miller*, *Montgomery*, *Jones*, and *Fletcher* are based."

in *Fletcher* that such a deficiency could be cured by a parole release hearing where the Parole Board considers the factors set out in *Miller*.[34]

Wilson argues that Alaska's parole system does not qualify as a "meaningful opportunity for release" under *Fletcher* because the Parole Board is not mandated to consider the *Fletcher* factors, is not mandated to provide applicants with counsel, and has released only a small percentage of applicants to discretionary parole in recent years. And if discretionary parole does not qualify as a "meaningful opportunity for release," then Wilson will not be eligible for release until he has served at least two-thirds of his sentence in prison — *i.e.*, 66 years, when he would be eighty-three years old.[35] Pursuant to our holding in *Fletcher*, a sentence of that length is a *de facto* life without parole sentence.

We conclude that Wilson's challenges to the discretionary parole system are premature. We discussed whether Alaska's system of discretionary parole could provide a meaningful opportunity for release in *Fletcher*. There, we noted that "while there is nothing requiring the Alaska Parole Board to treat juvenile offenders differently, there is also nothing preventing the parole board from applying the *Miller* factors and de-emphasizing the seriousness of the offense in cases involving juvenile offenders."[36] This observation remains true. Likewise, while the Parole Board is not mandated by

---

[34] *Fletcher*, 532 P.3d at 316-19.

[35] Under Alaska law, inmates eligible for good-time credits are awarded good-time credits equal to one-third of their sentence, are subject to losing those good-time credits as a sanction for prison disciplinary infractions, and are released onto mandatory parole once they have served their sentence less available good-time credits. *See Roller v. State*, 539 P.3d 518, 522 & n.16 (Alaska App. 2023) (describing the operation of AS 33.20.010-.040). When Wilson committed his offense in 1994, inmates convicted of murder were eligible for good-time credits. In 2019, the legislature amended AS 33.20.010(a) to add paragraph (4), precluding award of good-time credits on sentences for first- and second-degree murder. *See* FSSLA 2019, ch. 4, § 118.

[36] *Fletcher*, 532 P.3d at 319.

statute or regulation to provide Wilson with counsel, there is nothing in the statutes or regulations governing parole hearings that prevents the Parole Board from appointing counsel in these types of cases.[37] Similarly, while the Board is not required to hear from witnesses or to allow Wilson to cross-examine any witnesses against him, there is nothing preventing the Board from doing so.[38] Likewise, Wilson's statistics showing that the Board has granted parole to a minority of applicants in recent years does not prevent the Board from granting parole to any given applicant.

In short, the Parole Board is legally capable of providing a *Fletcher*-compliant hearing under its current statutes and regulations. Determining whether the Parole Board has actually provided a *Fletcher*-compliant hearing for Wilson will require that he actually go through a hearing. Until he does so, Wilson's challenges to the Parole Board are premature. We therefore decline to decide them now.[39]

*Conclusion*

For the reasons stated above, we AFFIRM the dismissal of Wilson's application for post-conviction relief.

---

[37] One regulation, 22 AAC 20.150(h), states that "an applicant is not *entitled* to legal representation" at discretionary parole application hearings. (Emphasis added.) But 22 AAC 20.150(n) provides that "[a]n attorney may represent the applicant at the hearing," though it disclaims any responsibility of the Parole Board or Department of Corrections to arrange or pay for such representation.

[38] 22 AAC 20.100(b) ("[T]he board will not permit the appearance of witnesses at discretionary parole hearings," except that "[t]he board may make a rare exception due to exigent circumstances.").

[39] *See Keller v. French*, 205 P.3d 299, 302 (Alaska 2009) (noting "courts should not resolve abstract questions or issue advisory opinions").

Judge TERRELL, concurring.

I write separately to outline what, in my view, a *Fletcher*-compliant parole hearing would entail.

First, the Parole Board must affirmatively consider the core holdings of *Roper*, *Miller*, *Montgomery*, and *Fletcher*. This means that, when evaluating Wilson's conduct as a juvenile, the Board must affirmatively consider and make findings as to the degree to which the following factors may have affected his criminal conduct: (1) that "children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking"; (2) that "children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers" and "have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings"; and (3) that "a child's character is not as 'well formed' as an adult's" and "his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'"[1] As part of this analysis, the Board must determine whether Wilson is among "[t]hose prisoners who have shown an inability to reform" — who "will continue to serve life sentences" — or is among those who can show that they are "capable of change," whom "release will be afforded to."[2] If parole is denied, the Parole Board must make findings explaining why Wilson has insufficiently rehabilitated himself.[3]

---

[1]   *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (omission and alterations in original) (quoting *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)); *Fletcher v. State*, 532 P.3d 286, 311 (Alaska App. 2023).

[2]   *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

[3]   By this, I do not mean that the Parole Board must release Wilson unless it makes such findings. The Parole Board may validly deny parole for any number of reasons.

Second, Wilson must be allowed "to present witnesses and documentary evidence" (absent exceptional circumstances) and "to confront and cross-examine adverse witnesses (unless [the Board or] the hearing officer specifically finds good cause for not allowing confrontation)."[4] The Due Process Clause of the Alaska Constitution already provides inmates involved in prison disciplinary proceedings with these rights.[5] And a juvenile offender sentenced to a *de facto* life sentence has at least as much of an interest in discretionary parole as an inmate does in disciplinary hearings.

Third, Wilson must be appointed counsel if he is indigent. I agree with the Massachusetts Supreme Court's analysis of this issue, which held that "the parole process takes on a constitutional dimension" for juvenile offenders "where the meaningful opportunity for release through parole is necessary in order to conform the juvenile homicide offender's mandatory life sentence to the requirements of [our state constitution]."[6] The constitutional right to such representation for offenders who are entitled to a *Fletcher*-compliant parole hearing must prevail over any statute or regulation denying the appointment of counsel in a discretionary parole hearing.

Fourth, Wilson's application must be fully considered when it is first raised. Postponing the decision on discretionary parole until some later date would be legally problematic for many offenders convicted of homicides committed when they were juveniles and who did not receive a *Fletcher*-compliant sentencing hearing because this may extend their sentence to a length that could make it a *de facto* sentence

---

Rather, the point of requiring such findings is to ensure that the Parole Board considers everything it needs to consider in order to make the parole hearing *Fletcher*-compliant.

[4] *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

[5] *McGinnis v. Stevens*, 543 P.2d 1221, 1236 (Alaska 1975).

[6] *Diatchenko v. Dist. Att'y for Suffolk Dist.*, 27 N.E.3d 349, 357 (Mass. 2015).

of life without parole. I assume that the Parole Board will give full consideration to the applications of such offenders, when they first apply for discretionary parole.