**Tamara Lynn RILEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1258.**

Court of Appeals of Alaska.

June 13, 1986.

Sen K. Tan, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Tamara Lynn Riley was convicted, after a jury trial, of murder in the first degree, in violation of AS 11.41.100. The crime is punishable by a minimum term of twenty years' imprisonment and by a maximum of ninety-nine years. Superior Court Judge Ralph E. Moody sentenced Riley to the maximum ninety-nine year term. Riley appeals, contending that her sentence is excessive. We affirm.

Riley and two other individuals, Ricky Eason and Harry Lewis, were convicted for the murder of Riley's husband, Leon Riley, Jr. The evidence at Riley's trial indicated that, in February 1984, Riley became employed as a dancer at P.J.'s, an Anchorage nightclub. There, she met Eason and Lewis. Riley became romantically involved with Eason. Apparently desiring to pursue her affair with Eason without interference

from her husband, and wanting also to collect on her husband's $35,000 life insurance policy, Riley plotted with Eason and Lewis to kill Leon Riley. Pursuant to their plan, on March 7, 1984, she invited Leon Riley to P.J.'s to see her dance. She later called Leon Riley from P.J.'s and told him that Eason would pick him up and give him a ride to the club. After making the call, Riley informed Eason and Lewis that everything was set. Eason and Lewis drove in Lewis' van to the Rileys' apartment, and Lewis hid in the back of the van when Leon Riley got in. As Eason drove back toward P.J.'s, Lewis grabbed Riley by the throat from behind and strangled him. After disposing of the body, Eason and Lewis returned to P.J.'s and informed Riley that her husband was dead.

At the time of the murder, Tamara Riley was eighteen years of age. She had no record of criminal misconduct, either as an adult or as a minor. Riley had been married for less than a year before deciding to kill her husband. There is nothing in the record to indicate that Riley's husband had ever been abusive toward her or that she would have had any cause for fear had she attempted to obtain a legal separation from him.

In arguing that the ninety-nine year term she received is excessive, Riley urges this court to establish a benchmark sentence of sixty years' imprisonment for first-degree murder. Riley relies on *Page v. State,* 657 P.2d 850 (Alaska App.1983), where we indicated that a sentencing range of twenty to thirty years was an appropriate benchmark for cases of murder in the second degree.

The benchmark for sentencing adopted in *Page,* however, was based on our survey of prior sentence appeals and was reflective of sentences previously imposed and approved in typical cases of murder in the second degree. No similar sentencing pattern would justify adoption of Riley's proposed sixty-year benchmark for first-degree murder. To the contrary, Alaska cases have consistently approved the imposition of maximum sentences for the offense.[1] Indeed, we are aware of no decision of this court or of the Alaska Supreme Court holding a maximum sentence for first-degree murder to be excessive.

Certainly, this does not mean that a sentence below the legal maximum would be inappropriate in every case of first-degree murder or that a maximum sentence could never be considered excessive for the offense. Nor does it mean that, in such cases, the sentencing court is free to disregard the obligation to base its sentence on a careful assessment of all applicable sentencing criteria. *See State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970). While the inherent seriousness of the offense will almost invariably require that the goals of isolation of the offender, general deter-

---

[1]. *See, e.g., Nukapigak v. State,* 663 P.2d 943, 946 (Alaska 1983); *Brown v. State,* 601 P.2d 221, 235 (Alaska 1979); *Vail v. State,* 599 P.2d 1371, 1382 (Alaska 1979); *Wilson v. State,* 582 P.2d 154, 157 (Alaska 1978); *Morgan v. State,* 582 P.2d 1017, 1029–30 (Alaska 1978); *Krukoff v. State,* 702 P.2d 664, 666 (Alaska App.1985); *Bangs v. State,* 663 P.2d 981, 987 (Alaska App.1983); *Williams v. State,* 655 P.2d 779, 782 (Alaska App.1982); *Hoover v. State,* 641 P.2d 1263, 1264 (Alaska App.1982).

We recognize that the current first-degree murder statute does not require "deliberate and premeditated malice" and is therefore considerably broader than the first-degree murder statute that was in effect prior to the adoption of the Revised Alaska Criminal Code. *Compare* AS 11.41.100 *with* former AS 11.15.010. For this reason, it is likely that some of the second-degree murder cases we considered in *Page* for purposes of establishing sentencing guidelines for second-degree murder actually reflected conduct that would qualify as first-degree murder under current law. *Cf. Pears v. State,* 698 P.2d 1198, 1202 & n. 12 (Alaska 1985) (observing that pre-1980 second-degree murder cases may not actually reflect "typical" conduct under current law, due to statutory changes enacted as part of the revised criminal code). A good argument could thus be made that the maximum sentence of ninety-nine years is not appropriate as a routine matter where a conviction of first-degree murder under current law is based on conduct that would previously have qualified only as second-degree murder. In such cases, sentence appeals dealing with second-degree murder convictions under prior law may well provide an appropriate point of reference. In the present case, however, the deliberate and premeditated nature of the murder for which Riley was convicted would clearly have qualified as first-degree murder under former law.

rence, and community condemnation be given a prominent role in sentencing, we believe it particularly important in first-degree murder cases involving youthful first offenders that rehabilitation and individual deterrence also be accorded careful scrutiny and appropriate weight.

In the present case, however, the sentencing court did not fail to consider these goals. In imposing sentence, Judge Moody apparently accepted the state's view that Riley in effect manipulated Eason and Lewis to assure that they would commit the murder of her husband. The murder was not a crime of passion. Rather, it was a deliberate, dispassionate killing carried out for substantial pecuniary gain. Prior to sentencing, Riley displayed little insight into the enormity of her crime and expressed little remorse or regret, except to the extent that she was able to recognize that being caught for the offense disrupted her own life. There is little, if any, information in the sentencing record to indicate that rehabilitation is a realistic prospect for Riley in the foreseeable future.

In light of these factors, Judge Moody expressly found that Riley was among the worst offenders in her class and that she posed serious danger to the community. For these reasons, Judge Moody imposed a maximum sentence of ninety-nine years' imprisonment, despite Riley's youth and her lack of prior criminal convictions. Having independently reviewed the entire sentencing record, we conclude that the sentence imposed by Judge Moody is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.