Guy W. JOHNSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7401.

Court of Appeals of Alaska.

Sept. 12, 2003.

David K. Allen, Assistant Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Guy W. Johnson was convicted of first-degree murder[1] and sentenced to 99 years in prison. In our earlier decision in this case,[2] we addressed Johnson's attorney's motion to withdraw. The attorney claimed that Johnson's case presented no non-frivolous issues. We directed the attorney to file a supplemental brief that conformed with the requirement we established in *Griffin v. State:*[3] "[An] attorney seeking to withdraw from [an appeal] must provide [this] court with a full explanation of all the claims the attorney has considered and why the attorney has concluded that these claims are frivolous."[4]

We have now reviewed the attorney's supplemental brief. Johnson himself has filed a brief. We have independently examined the record in light of this additional briefing. We do not agree with Johnson's attorney that the case raises no non-frivolous issues; we conclude that Johnson's case presents at least two arguable claims. Accordingly, we order additional briefing.

*Background facts*

On June 28, 1997, Johnson shot Brad McKown to death outside of McKown's cabin in Fairbanks. Johnson called 911 from the cabin and reported that he had killed McKown. When Alaska State Troopers arrived at the cabin, Johnson explained that he had had an ongoing feud with McKown. Johnson said that his problems with McKown began when Johnson first moved onto property owned by the Upton family, where McKown was also living at the time. McKown left the state a short while later. When McKown returned, he did not live on the Upton property but appeared there occasionally to retrieve belongings he had left behind and, according to Johnson, to harass Johnson. Corbett Upton eventually told McKown to stay off the property. Johnson was convinced that McKown continued to trespass.

Johnson claimed that he went to McKown's cabin because Johnson believed that McKown had been trespassing on the property Johnson lived on. Johnson told the troopers that McKown came out of the cabin, told him to leave, and turned to head back inside. Johnson said he shot at McKown when McKown turned around. Johnson said he fired all six shots from his handgun at McKown's back. Johnson added, "I wasn't just trying to hurt him. I wanted him dead then." Johnson said he then took his rifle and shot McKown while he tried to crawl away. McKown was shot eight times. McKown died as a result of the gunshot wounds. The grand jury indicted Johnson for first-degree murder.

1. AS 11.41.100(a).

2. *Johnson v. State,* 24 P.3d 1267 (Alaska App. 2001).

3. 18 P.3d 71 (Alaska App.2001).

4. *Id.* at 77.

Johnson's statements to the troopers were recorded, and portions were played at trial. Johnson also reenacted the events at the cabin while the troopers videotaped; portions of the videotape were played at the trial.

Johnson personally claimed that the tape recording of his on-the-scene statement to Trooper Susan Acquistapace had been altered. Johnson's trial attorney submitted a motion in limine seeking to prevent the State from relying on the tape but the attorney later withdrew the motion and told the court that he did not believe the tape had been altered. The defense did not object when the State played portions of the tape during its case in chief.

Before Johnson testified, Superior Court Judge Dale O. Curda issued a protective order barring Johnson from presenting evidence of his personal belief that the tapes had been altered. Nevertheless, Johnson testified, "Those are edits you're hearing. You're listening to edits," and implied that portions of his taped statement to Acquistapace had been removed.

Johnson also sought to introduce a photograph of the victim's rifle inside the victim's cabin to support his claim that he killed McKown in self-defense. Judge Curda ruled that the photograph had minimal relevance and was unfairly prejudicial because the last time Johnson had seen McKown with the rifle was several years before Johnson killed McKown. But, when Johnson testified, he stated that McKown "turned to walk toward the cabin door, where there was a rifle inside the door . . . ."

Johnson also testified that after he fired the first shots, injuring McKown, "I had already committed myself to killing him at that time. . . . I say that repeatedly. I didn't want him just hurt. I imply that I wanted him dead then, yes."

The court gave a self-defense instruction, and although it was not the version proposed by Johnson, Johnson did not object. Johnson specifically requested that the jury not be instructed on the lesser included offense of second-degree murder, so there were no lesser included offense instructions. The

jury returned a guilty verdict on first-degree murder.

*The evidence regarding McKown's rifle raises an arguable claim*

■ Johnson sought to admit a photograph that showed that there was a rifle inside McKown's cabin when Johnson shot him. The court ruled that the presence of the rifle had minimal relevance and was more prejudicial than probative. Even so, Johnson testified that "there was a rifle inside the door" at McKown's cabin.

Johnson did not know the rifle was there and conceded when he testified that he had not seen McKown with any firearms and thought that McKown was probably unarmed. Even so, the court instructed the jury on self-defense. Johnson argued self-defense and cited his knowledge that McKown had a firearm during his argument.

Even though the court ruled that the photograph of the rifle and any evidence of the rifle's presence were not admissible, Johnson testified that McKown had a rifle inside the cabin. And Johnson referred to McKown's firearm during his final argument.

Although Johnson's concern that McKown possessed a firearm was based on years-old information, that knowledge tended to support his claim that he subjectively feared for his safety because he thought McKown had access to a weapon. Thus Johnson could plausibly argue that Judge Curda abused his discretion by ruling that the photograph, and other evidence that McKown had access to a rifle in the cabin, was not admissible.

■ A claim is frivolous if there is no colorable argument that a zealous advocate could advance in support of the claim.[5] We conclude that this potential claim is non-frivolous, that is, Johnson can plausibly argue on this record that Judge Curda should have admitted the photograph and other evidence that McKown possessed the rifle. This is not to say that the claim is necessarily meritorious. Perhaps the probative force of the photograph is small. Even so, because the presence of the rifle tended to support Johnson's

---

**5.** *Griffin,* 18 P.3d at 73.

claim that he reasonably feared McKown, Johnson can plausibly argue that Judge Curda abused his discretion by barring this evidence.

Because Johnson has a plausible argument on this issue, Johnson is entitled to have an attorney zealously advocate this claim.

*Johnson's maximum sentence raises an arguable excessiveness claim*

■ Judge Curda found that Johnson was a worst offender.[6] He found that Johnson showed a "total lack of responsibility." He described McKown's murder as a "deliberate, cold-blooded execution." He found that Johnson's conduct showed "deliberate cruelty." Out of the *Chaney* sentencing factors, Judge Curda focused on Johnson's isolation. He imposed a 99-year term.

Johnson received the maximum 99-year sentence for his first-degree murder conviction. Although Judge Curda found that Johnson was a worst offender based on this offense, the pre-sentence report showed that Johnson had no significant adult criminal record (he had a 1970 failure to appear in Florida) and provided no information that Johnson had a juvenile record. The report also advised that Johnson appeared to have unaddressed mental health issues.

■ Even though our decision in *Riley v. State*[7] suggests that a defendant who commits first-degree murder is often, by virtue of the crime itself, properly categorized as a "worst offender," we did not rule that first-degree murderers can always receive 99-year sentences, nor does *Riley* free sentencing judges from their obligation to base sentences on a careful consideration of the *Chaney* sentencing criteria.[8] However, after *Riley*, a defendant who challenges a 99-year sentence for first-degree murder must show some reason to believe that his offense is mitigated or that his background is atypically favorable.[9]

Again, we do not rule that Johnson's potential excessiveness claim is necessarily meritorious. Instead, we rule that Johnson's potential excessiveness claim is non-frivolous because Johnson has a colorable claim that his sentence is excessive.

Johnson himself identified several points on appeal in the brief he filed in response to his attorney's brief.[10] But other than identifying these points, Johnson has not cited the record to support those issues or pointed out any authority that supports those claims.

We have not reviewed the record in light of Johnson's personal claims to decide whether any of those claims are frivolous. Nor have we considered whether the other claims that Johnson's attorney raised in his supplemental brief are frivolous.

Although we have discussed two non-frivolous claims above, Johnson's attorney retains the tactical choice to decide what issue or issues should be advanced in this appeal on Johnson's behalf—whether the issues are those we identified, the issues raised by Johnson personally, the remaining issues identified in the supplemental brief, or any other issues identified with additional analysis.[11]

We address one last point. Johnson's present attorney has twice claimed in this appeal that Johnson's case presents no non-frivolous issues. If Johnson requests that the case be reassigned to another attorney,

---

6. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975).

7. 720 P.2d 951 (Alaska App.1986).

8. AS 12.55.005; *Riley*, 720 P.2d at 952; *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

9. *See Sakeagak v. State*, 952 P.2d 278, 285 (Alaska App.1998).

10. Johnson identified eleven claims:
   1. Deliberate sabotage of evidence by State of Alaska State Police; 2. Trial Fraud; 3. Obstruction of Appeal & Justice; 4. Fabrication & Destruction of Evidence; 5. Coverup of Trial Fraud by State of Alaska Court System; 6. Failure to allow Credible Demonstration by Myself in my own Defense of Simultaneous Recordings. One altered, one is not; 7. Obstruction of Brief of Appellant; 8. Compromise of Trial Records; 9. Sabotage of Democracy & Treason; 10. Fabrication of Confession; 11. Failure to Correct Errors.

11. *See Tucker v. State*, 892 P.2d 832, 837 & n. 7 (Alaska App.1995).

we direct the Office of Public Advocacy to reassign the case.

*Conclusion*

We order additional briefing. We direct the clerk's office to issue an order specifying that Johnson's opening brief is due ninety days from the date of this opinion.