NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

TRAYVON LEON ARTIS MORRISSETTE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13322
Trial Court No. 3AN-16-05790 CR

O P I N I O N

No. 2740 — February 10, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge ALLARD, writing for the Court.
Judge WOLLENBERG, dissenting in part.

Trayvon Leon Artis Morrissette was convicted, following a jury trial, of first-degree murder for shooting Jorge Rea-Villa nine times, killing him.[1] Morrissette was also convicted of first-degree burglary based on his unlawful entry into a secured parking garage and an apartment building during the police manhunt that followed the killing.[2] For these crimes, Morrissette received a composite sentence of 99 years to serve. Morrissette now appeals, raising three claims of error.

First, Morrissette argues that there was insufficient evidence to convict him of first-degree murder because, he claims, the evidence showed that he was in a methamphetamine-induced psychosis at the time of the shooting. Second, Morrissette argues that the superior court committed plain error when it failed to provide the jury with a factual unanimity instruction with regard to the burglary charge. Lastly, Morrissette argues that his sentence is excessive.

For the reasons explained here, we reject these claims of error and affirm the superior court's judgment.

*Factual background and prior proceedings*

On July 4, 2016, Morrissette was at a holiday barbeque at a friend's trailer. Also present was Jorge Rea-Villa. At one point, some of the people at the barbeque decided to visit a strip club. In preparation for this outing, Rea-Villa went to the bathroom to fix his hair.

Shortly thereafter, there were multiple gunshots. Morrissette was then seen coming out of the bathroom where Rea-Villa had been. Morrissette had shot Rea-Villa nine times with a nine-millimeter handgun. One of the gunshots struck Rea-Villa in the

---

[1]   AS 11.41.100(a)(1)(A).

[2]   AS 11.46.300(a)(1).

head and was immediately fatal. When asked by one of the barbecue attendees why he shot Rea-Villa, Morrissette said nothing and "was just blank." Witnesses who were at the barbecue testified that they had not seen Morrissette and Rea-Villa fighting that day, and did not know of any reason why the two men would have been mad at each other.

After leaving the barbecue, Morrissette tried to evade the police by driving into a secured underground parking garage. Once in the parking garage, Morrissette was seen trying to break into cars. Morrissette was then seen entering the apartment building, trying to enter into different apartments. In at least one instance, Morrissette actually entered someone's apartment unit. While the police continued to search for him, Morrissette left the apartment building and broke into the maintenance shed of another nearby apartment complex, where he changed clothing. Morrissette then jumped a ten-foot fence, entered a wooded area, and subsequently hid in a stairwell leading to the basement-level entrance to a third apartment building. The police K-9 unit ultimately tracked Morrissette to this stairwell, and the police arrested him.

At the police station, Detective Leonard Torres interviewed Morrissette. According to Torres, Morrissette was "functioning fine" at that time — Morrissette had normal motor function, he seemed to know where he was, and he was able to follow the instructions officers gave him.

Morrissette was charged with first-degree and second-degree murder for killing Rea-Villa; he was also charged with first-degree burglary for his entry into the secured parking garage, attempting to break into various cars, and his entry into an apartment inside the building.

At trial, Morrissette testified in his own defense. Morrissette testified that he used to work at Moore Heating and was the primary caretaker for his children. But his addiction to methamphetamine caused him to lose his job and caused his friends — including those who also used methamphetamine — to be worried for him. Morrissette

testified that he had become increasingly paranoid because of his methamphetamine use, and he gave examples of irrational actions he had taken in the recent past because of this paranoia. These actions included: repeatedly changing the locks at his home, smashing a hole in the wall searching for non-existing surveillance equipment, repeatedly calling an exterminator to rid his house of an imagined mite infestation, going to the hospital for an imagined carbon monoxide poisoning, and almost getting into fights with his friends after he accused them of things they were not doing.

Morrissette testified that on the day of the shooting, he smoked methamphetamine in the morning and had not slept for a number of days. Morrissette remembered walking to the bathroom at the barbeque and realizing that Rea-Villa was in there. He remembered pulling out his gun and shooting Rea-Villa multiple times but he did not know why. When asked what was going through his mind as he pulled the gun out, Morrissette stated: "Nothing." He testified that he did not intend to pull out the gun and shoot anybody, and that he did not want to hurt anybody. Morrissette also testified that, after the shooting, he followed a car into a parking garage but he did not know why he was trying to get into other cars or why he did the other things he did after the shooting.

In addition to his own testimony, Morrissette presented an expert witness who testified that chronic methamphetamine use can lead to psychosis and paranoia and that he believed this was what Morrissette was experiencing when Morrissette shot Rea-Villa. The expert witness testified that Morrissette's shooting of Rea-Villa was likely impulsive and a "reflexive response to some type of social misinterpretation."

Following deliberations, the jury found Morrissette guilty of first-degree murder, second-degree murder, and first-degree burglary. At sentencing, the superior court merged the two murder verdicts into a single conviction for first-degree murder and sentenced Morrissette to 95 years to serve on the murder conviction. The court also

sentenced Morrissette to 4 years to serve on the burglary conviction, for a composite sentence of 99 years to serve.

This appeal followed.

*Morrissette's argument that the evidence at trial was insufficient to prove first-degree murder*

To prove Morrissette guilty of first-degree murder, the State had to prove beyond a reasonable doubt that Morrissette acted with the intent to kill Rea-Villa when he shot him nine times, killing him.[3] At trial, Morrissette argued that he did not intend to kill Rea-Villa, and that he was incapable of forming that intent because he was in a methamphetamine-induced psychosis at the time of the killing. There was evidence to support this defense. Morrissette testified to his serious methamphetamine addiction and his increasing paranoia that people were out to get him, which was part of the reason he started carrying a loaded handgun. His friends provided similar testimony. The defense also presented the testimony of an expert witness, who opined that Morrissette did not intend to kill Rea-Villa, but rather acted out of a "reflexive response to some type of social misinterpretation that happened very abruptly" upon seeing Rea-Villa in the bathroom that Morrissette was entering.

But there was also evidence that supported the State's theory that Morrissette was not actively psychotic or otherwise incapable of forming the intent to kill. The State argued that Morrissette's actions in evading the police — which included following a car into a secured parking area, attempting to steal a vehicle, escaping from an apartment building surrounded by the police, and changing his clothing — demonstrated a level of cognitive functioning inconsistent with his defense. A police

---

[3] AS 11.41.100(a)(1)(A).

officer who interacted with Morrissette also testified that, after his arrest, Morrissette was "functioning fine" and was able to follow all of the officers' directions.

When we review the sufficiency of the evidence on appeal, we are required to view the evidence, and all reasonable inferences to be drawn from that evidence, in the light most favorable to upholding the verdict.[4] We do not weigh the evidence or judge witness credibility, as those are matters for the jury to decide.[5] Here, viewing the evidence in the light most favorable to upholding the verdict, we conclude that a fair-minded juror could have rejected Morrissette's defense and found proof beyond a reasonable doubt that Morrissette intended to kill Rea-Villa when he shot him nine times.

*Morrissette's argument that the superior court committed plain error by failing to provide the jury with a factual unanimity instruction*

Morrissette's second claim on appeal is a plain error challenge to his first-degree burglary conviction. The State argued that Morrissette was guilty of first-degree burglary based on his unlawful entry into an apartment building's secured underground parking garage during his flight from the police, and on Morrissette's unlawful entry into an apartment in that same building. At trial, there was a videotape of Morrissette unlawfully entering the secured garage, and Morrissette did not dispute this unlawful entry at trial. However, Morrissette testified that he did not remember separately entering an apartment.

On appeal, Morrissette argues that the superior court committed plain error when it failed to give the jury a factual unanimity instruction differentiating between the alleged act of unlawfully entering the building's secured garage and the alleged act of

---

[4]   *Johnson v. State*, 188 P.3d 700, 702 (Alaska App. 2008).

[5]   *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009).

– 6 –                                                                2740

unlawfully entering an apartment in the building. The State argues that any error was harmless beyond a reasonable doubt given that the evidence of Morrissette's unlawful entry into the secured underground parking garage was essentially undisputed.[6] We agree and therefore reject this plain error argument on appeal.

*Morrissette's argument that his sentence is excessive*

The superior court sentenced Morrissette to 95 years for the first-degree murder and a consecutive 4 years for the first-degree burglary, resulting in a composite sentence of 99 years to serve. On appeal, Morrissette argues that the sentence is excessive and that it undermines the sentencing goal of rehabilitation because it does not include any suspended time.

But the record shows that the superior court found that Morrissette had only "guarded" prospects for rehabilitation given his criminal history (which included a serious assault while under the influence of marijuana and alcohol), his long-time methamphetamine addiction, and his stated belief that he could remain drug-free without treatment. The court therefore focused on community condemnation and reaffirmation of societal norms as the most important sentencing considerations.

When we review an excessive sentence claim, we independently examine the record to determine whether the sentence is clearly mistaken.[7] The "clearly mistaken" standard contemplates that different reasonable judges, confronted with identical facts, will differ on what constitutes an appropriate sentence, and that a

---

[6]   *See Malyk v. State*, 2018 WL 6719694, at \*4-5 (Alaska App. Dec. 19, 2018) (unpublished) (holding that failure to give factual unanimity instruction was harmless beyond a reasonable doubt where there was "no reasonable possibility" that the jury would have acquitted on one of the criminal acts supporting the defendant's conviction).

[7]   *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).

reviewing court will not modify a sentence that falls within a "permissible range of reasonable sentences."[8]  Having independently reviewed the sentencing record in this case, we conclude that the composite sentence imposed here is not clearly mistaken.

Although we affirm Morrissette's sentence as not clearly mistaken, we acknowledge the legitimacy of the concerns raised by the dissent.  We agree with Judge Wollenberg that some of our previous case law could be misread as suggesting that 99 years should be considered the default sentence for most, if not all, first-degree murder convictions.[9]  As Judge Wollenberg correctly points out, such a view is incompatible with the legislative sentencing scheme, the requirements of due process, and the rule of parsimony.[10]  We agree that there is no default sentence for first-degree murder, and not all first-degree murder convictions or offenders are the same.

As the dissent also explains, appellate courts play a very different role in sentencing than trial courts.[11]  As an appellate court working from a cold record, our

---

[8]  *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).

[9]  *See, e.g.*, *Riley v. State*, 720 P.2d 951, 952 (Alaska App. 1986); *Johnson v. State*, 77 P.3d 11, 14 (Alaska App. 2003); *Sakeagak v. State*, 952 P.2d 278, 285 (Alaska App. 1998).

[10]  *See Pears v. State*, 698 P.2d 1198, 1205 (Alaska 1985) (explaining that, under the rule of parsimony, a "defendant's liberty should be restrained only to the minimum extent necessary to achieve the objectives of sentencing"); *see also ABA Standards for Criminal Justice: Sentencing* § 18–2.4 (3d ed. 1994) ("Sentences authorized and imposed, taking into account the gravity of the offenses, should be no more severe than necessary to achieve the societal purposes for which they are authorized."), § 18–6.1(a) ("The sentence imposed should be no more severe than necessary to achieve the societal purpose or purposes for which it is authorized.").

[11]  *See Garrison v. State*, 762 P.2d 465, 469 (Alaska App. 1988) ("Sentencing is primarily a trial court function.  It is an individualized process, and appellate courts have traditionally deferred to the trial judge's superior opportunity to evaluate the offender and the

(continued...)

review is limited to whether the sentence fits within "a permissible range of reasonable sentences" given the record before us.[12] Thus, we will affirm a sentence as not clearly mistaken even if we believe that a lower sentence would also have been reasonable.[13]

But, unlike the appellate courts, a trial court should not approach sentencing in terms of "reasonable ranges" of sentences that could be imposed. Instead, the trial court is obligated to conduct an individualized sentencing hearing and to impose the *lowest* sentence, within the boundaries created by the legislature, that it believes will achieve the *Chaney* criteria.[14]

Having independently reviewed the record and the superior court's findings in this case, we are confident that the superior court fulfilled its duty here and did not simply default to a sentence of 99 years. Moreover, because we conclude that the sentence imposed falls within the range of reasonable sentences given the record in this

---

[11] (...continued) offense.").

[12] *McClain*, 519 P.2d at 813; *see also Garrison*, 762 P.2d at 469 ("Sentence review . . . is primarily a safety valve; it is an opportunity to correct sentences which deviate too far from the norm.").

[13] *See, e.g.*, *Galindo v. State*, 481 P.3d 686, 690 (Alaska App. 2021) (affirming the defendant's sentence while also acknowledging that a different judge may have imposed a lower sentence); *Voorhis v. State*, 2011 WL 3368133, at *4 (Alaska App. Aug. 3, 2011) (unpublished) (same).

[14] *Pears*, 698 P.2d at 1204-05; *Soeth v. State*, 2005 WL 545271, at *5 (Alaska App. Mar. 9, 2005) (unpublished) (noting that "defendants convicted of first-degree murder should not automatically receive a 99-year sentence," but rather, sentencing judges should "carefully analyz[e] the facts of each defendant's case in light of the *Chaney* criteria" (internal quotation marks and citations omitted)); *see also State v. Chaney*, 477 P.2d 441 (Alaska 1970) (establishing criteria for sentencing that are now codified in AS 12.55.005).

case, we will affirm it as not clearly mistaken, even if a different trial court judge might reasonably have imposed a lower sentence with some suspended time.[15]

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[15] *See Pickard v. State*, 965 P.2d 755, 760 (Alaska App. 1998) ("The principle of parsimony does not convert appellate sentence review into a sentencing *de novo*. Sentence review is still conducted under the 'clearly mistaken' standard — the principle that there is a range of reasonable sentences that will not be disturbed on appeal.").

Judge WOLLENBERG, dissenting in part.

I agree with the Court's resolution of Trayvon Morrissette's challenges to his convictions. But because the superior court made findings inconsistent with the imposition of a composite 99-year term, and because I am concerned that the sentencing in this case was influenced by the misperception that 99 years is the default starting point for sentencing in first-degree murder cases, I would remand this case to the superior court for reconsideration of Morrissette's sentence and, if necessary, resentencing. I therefore dissent in part.

At sentencing, the superior court emphasized the sentencing goals of reaffirmation of societal norms and community condemnation over rehabilitation. The superior court had good reasons for doing so: Morrissette had a prior assault conviction in which the victim was badly injured, and despite his substantial substance abuse problem — which played a role in both this and his prior offense — Morrissette believed that he could maintain sobriety without treatment. It was reasonable for the superior court to find that Morrissette's prospects for rehabilitation were "guarded."

At the same time, the superior court made findings suggesting that Morrissette's case did not warrant a maximum penalty. As the majority opinion notes, even the most serious cases, like first-degree murder, require courts to consider the nature of the defendant's conduct relative to other instances of the same crime and evaluate the facts of the case and the defendant's background to determine an appropriate penalty within the applicable range.[1] Here, the superior court found that, while the

---

[1] *See Voyles v. State*, 2017 WL 2709730, at *4 (Alaska App. June 21, 2017) (unpublished) (recognizing that "principles of fairness and equity require sentencing courts to consider the nature of the defendant's conduct relative to other instances of the same crime . . . despite the difficulties that such comparisons may present").

murder in this case was "not mitigated," it was "not the most serious" case of first-degree murder. The superior court further found that were it not for Morrissette's methamphetamine use and his decision to arm himself with a gun while using drugs, the shooting would not have occurred. In particular, the superior court found that there was "[n]o argument, no reason for this to have happened other than an individual being under the influence of meth and possessing a gun." Despite the State's request to find Morrissette to be a "worst offender," the superior court declined to do so.

Notwithstanding the superior court's view that this was "not the most serious" case of first-degree murder, and that Morrissette's criminal conduct was fueled by his drug use, the superior court effectively imposed a life sentence on Morrissette — a term of 95 years for the first-degree murder conviction, consecutive to a 4-year term for the first-degree burglary conviction (for a composite term of 99 years).

On appeal, Morrissette argues that his sentence is excessive — primarily challenging the superior court's failure to impose some suspended time. Morrissette acknowledges that he committed a serious assault when he was sixteen years old, but he notes that he successfully completed adult probation after a period of supervision that the presentence report writer described as "essentially uneventful." He also notes that the presentence report writer recommended a moderately high sentence with a moderate amount of suspended time. He asserts that the fact that his crime was fueled by his drug use underscores the need for some period of rehabilitative supervision.

The superior court did not explain why it declined to suspend any time. But implicitly, the superior court's sentence appears to have been driven in part by the notion that 99 years should be the starting point, rather than the ending point, for sentencing in first-degree murder cases. This is inconsistent with our sentencing scheme and the principle of parsimony, but can be easily misunderstood based on our prior sentencing cases in this area.

In *Riley v. State*, a 1986 case, we declined to adopt a 60-year benchmark sentence for first-degree murder.[2] In doing so, we noted that Alaska cases "have consistently approved the imposition of maximum sentences for [this] offense" and that we were "aware of no decision . . . holding a maximum sentence for first-degree murder to be excessive."[3]

We acknowledged that a maximum sentence for first-degree murder could potentially be excessive and emphasized that a sentencing court is not "free to disregard the obligation to base its sentence on a careful assessment of all applicable sentencing criteria."[4] But our later cases could be read to imply (incorrectly) that the defendant has the burden of proving that a first-degree murder is mitigated in order to justify a sentence below 99 years.

For instance, in *Sakeagak v. State*, this Court stated that, "after *Riley*, a defendant who challenges a 99-year sentence for first-degree murder must show some reason to believe that his offense is mitigated or that his background is atypically favorable."[5] And in *Johnson v. State*, we described *Riley* as suggesting that a defendant "who commits first-degree murder is often, by virtue of the crime itself, properly categorized as a 'worst offender.'"[6] We therefore stated that "a defendant who

---

[2] *Riley v. State*, 720 P.2d 951, 952 (Alaska App. 1986).

[3] *Id.*

[4] *Id.*

[5] *Sakeagak v. State*, 952 P.2d 278, 285 (Alaska App. 1998).

[6] *Johnson v. State*, 77 P.3d 11, 14 (Alaska App. 2003).

– 13 –                                                                    2740

challenges a 99-year sentence for first-degree murder must show some reason to believe that his offense is mitigated or that his background is atypically favorable."[7]

These statements are meant to describe an *appellate court's* review of a defendant's challenge to a 99-year sentence. As the majority notes, when an appellate court reviews a sentence, it evaluates only whether a sentence fits within "a permissible range of reasonable sentences," given the record before us.[8] Thus, *on appeal*, a defendant who challenges a 99-year sentence for first-degree murder must show "some reason to believe that his offense is mitigated or that his background is atypically favorable."[9]

But I have significant concerns that this principle is relied on in the first instance in the trial court to justify the imposition of a 99-year sentence, or to use 99 years as the presumptive starting point for sentencing. For example, in this case, the prosecutor argued at sentencing that "*Riley* and I think the other cases [cited in the State's sentencing memorandum] stand for the proposition that there's close to a presumption of correctness for a 99-year sentence in a case like this in recognition of the enormity of the crime."

To the extent our cases suggest, or have been interpreted to suggest, that the default sentence for first-degree murder is 99 years and that the burden is on a defendant in the trial court to affirmatively show that a lesser sanction is required, this is inconsistent with both the legislature's sentencing scheme — which establishes a broad

---

[7]   *Id.*

[8]   *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).

[9]   *Johnson*, 77 P.3d at 14.

range of permissible sentences, from 20 to 99 years[10] — and with the requirements of due process and the principle of parsimony.  Under the principle of parsimony, a "defendant's liberty should be restrained only to the minimum extent necessary to achieve the objectives of sentencing."[11]

As we said in *Soeth v. State*, an unpublished decision:

> [D]efendants convicted of first-degree murder should not automatically receive a 99-year sentence; such a rule would be completely inconsistent with the sentencing scheme established by the legislature for this crime.  *See* AS 12.55.125(a).  Our decisions in *Riley* and in subsequent first-degree murder cases do not absolve sentencing judges from carefully analyzing the facts of each defendant's case in light of the "*Chaney* criteria" — *i.e.*, the sentencing criteria now codified in AS 12.55.005.[12]

In *Riley*, we also suggested that the most serious sentences in first-degree murder cases should be reserved for cases involving premeditation.  We noted that, prior

---

[10]   Former AS 12.55.125(a) (pre-July 12, 2016).  In 2016, the legislature amended the mandatory minimum sentence for first-degree murder from 20 to 30 years; the maximum sentence remains 99 years.  SLA 2016, ch. 36, § 86.  Because Morrissette committed his offense prior to the July 12, 2016 effective date of the new statute, his case is governed by the prior range of 20 to 99 years.  SLA 2016, ch. 36, § 185(a); *see also Nelson v. State*, 2021 WL 1232524, at *2 n.5 (Alaska App. Mar. 31, 2021) (unpublished) (explaining the July 12, 2016 effective date for certain provisions in the 2016 legislation).

[11]   *Pears v. State*, 698 P.2d 1198, 1205 (Alaska 1985); *see also ABA Standards for Criminal Justice:  Sentencing* § 18–2.4 (3d ed. 1994) ("Sentences authorized and imposed, taking into account the gravity of the offenses, should be no more severe than necessary to achieve the societal purposes for which they are authorized."), § 18–6.1(a) ("The sentence imposed should be no more severe than necessary to achieve the societal purpose or purposes for which it is authorized."); *see also* Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.").

[12]   *Soeth v. State*, 2005 WL 545271, at *5 (Alaska App. Mar. 9, 2005) (unpublished).

to the criminal code revision that went into effect in 1980, the offense of first-degree murder required "deliberate and premeditated malice." Since the current crime of first-degree murder encompasses conduct beyond that, to include conduct that would have previously qualified only as second-degree murder, we acknowledged that a 99-year maximum sentence might "not [be] appropriate as a routine matter" in such cases.[13]

In the years since *Riley*, we have interpreted this footnote as standing for the proposition that proof of a defendant's premeditation, standing alone, will justify the imposition of a 99-year sentence — but other aggravating factors may also justify the imposition of a maximum term.[14]

In Morrissette's case, it is undisputed that there was no premeditation. And the superior court found that this first-degree murder — while unquestionably serious and tragic — was less serious in terms of the circumstances relative to others.

Because the superior court did not find that Morrissette was a worst offender, it did not impose a maximum 99-year sentence for the murder. However, the court nonetheless imposed a 95-year sentence for the murder, and an additional 4 years for the burglary. This is a life sentence that is effectively indistinguishable from a maximum sentence.

Given the superior court's conflicting findings, I would remand this case for the superior court to either reduce the sentence and/or impose some period of

---

[13]   *Riley v. State*, 720 P.2d 951, 952 n.1 (Alaska App. 1986).

[14]   *See, e.g., Soeth*, 2005 WL 545271, at *2-5 (maximum term for first-degree murder justified where defendant conceded multiple aggravating factors, including prior assaultive conduct and prior juvenile adjudication for involuntary manslaughter, and the trial court found the defendant to be a worst offender); *Thompson v. State*, 768 P.2d 127, 133 (Alaska App. 1989) (maximum term justified where the trial court found that the first-degree murder for stabbing former wife twenty-nine times and then disposing of her body was a "worst offense").

suspended time, or explain why it concluded that Morrissette's prospects for rehabilitation — while guarded — merited essentially no consideration.